# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :      NO. 1:20-CR- 17·

               : 

        v.               :      (JUDGE Wilson )

               : 

CHRISTOPHER COLLARE,      : 

    Defendant            :      **Filed under seal**

## I N D I C T M E N T

### COUNTS 1 THROUGH 16
(Wire fraud)

THE GRAND JURY CHARGES:

**FILED**
HARRISBURG, PA

JAN 1 6 2020

Per _____

Deputy Clerk

## BACKGROUND

At times material to this Indictment:

1.     The defendant, CHRISTOPHER COLLARE, was a police officer for the Carlisle Police Department in Carlisle, Pennsylvania, from in or about 1996 to in or about October 2018.

2.     COLLARE was a member of the Cumberland County Drug Task Force (CCDTF) from in or about November 2011 to in or about May 2018. The CCDTF was operated by the Office of the District Attorney of Cumberland County, was composed of county and municipal law enforcement officers, and investigated drug offenses in Cumberland County.

3.     COLLARE was a task force officer for the FBI from in or about November 2015 to in or about May 2018 and served on the FBI's Capital City Safe Streets Task Force in Harrisburg, Pennsylvania.  Safe Streets Task Forces were operated by the FBI in numerous cities throughout the United States, were composed of federal, state, and local law enforcement officers, and investigated violent crime, including drug offenses.

4.     As a Carlisle police officer and task force officer with the CCDTF, COLLARE was an agent of the Borough of Carlisle and Cumberland County, Pennsylvania, and he had a fiduciary duty to act in the best interests of the Borough of Carlisle and its citizens and in the best interests of Cumberland County, Pennsylvania, and its citizens.

5.     As a Carlisle police officer and task force officer with the CCDTF and FBI, COLLARE recruited and enlisted confidential informants to assist in drug investigations.

6.     At COLLARE's direction and under his supervision, confidential informants participated in controlled buys.  Persons #1 through #8 were informants who participated in controlled buys at the

direction and under the supervision of COLLARE. A controlled buy was a law enforcement operation in which a law enforcement officer provided a confidential informant with law enforcement funds and the confidential informant used those funds to purchase drugs from a target of an investigation. The purchased drugs were evidence of a crime. Persons #9 through #15 were targets of investigations in which COLLARE participated.

7. The Pennsylvania Justice Network, or JNET, was an Internet database available to law enforcement officers in Pennsylvania. Through JNET, law enforcement officers were able to access criminal justice information related to an individual.

8. Through JNET, law enforcement officers were able to access WebCPIN. WebCPIN was a database of photographs captured by law enforcement entities in numerous jurisdictions in the United States.

THE SCHEME

9. Beginning on an unknown date, but at least by in or about December 2011, and continuing through in or about May 2018, in the Middle District of Pennsylvania and elsewhere, COLLARE knowingly devised, intended to devise, and participated in a scheme and artifice to

3

defraud the Borough of Carlisle and the CCDTF, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

It was part of the scheme that:

10.    COLLARE recruited and enlisted confidential informants to assist in CCDTF investigations; on law enforcement forms associated with controlled buys, COLLARE materially falsified information, including but not limited to the amount of drugs purchased; and for the purpose of developing sexual relationships with female confidential informants and assisting his professional productivity, COLLARE provided confidential informants with drugs obtained during controlled buys and knowingly allowed confidential informants to retain drugs the confidential informants obtained during controlled buys.

11.    In the course of recruiting and working with confidential informants, COLLARE conducted searches on JNET and WebCPIN to obtain information about the confidential informants and the targets of the drug investigations for which COLLARE had enlisted the confidential informants.

12.    COLLARE enlisted Person #1 as confidential informant in or about December 2011.

13.    In or about January 2012, COLLARE materially falsified law enforcement forms related to controlled buys conducted by Person #1.

14.    COLLARE enlisted Person #2 as a confidential informant in or about February 2012.

15.    In or about February 2012 and August 2013, COLLARE materially falsified law enforcement forms related to controlled buys conducted by Person #2.

16.    COLLARE enlisted Person #3 as a confidential informant in or about September 2012.

17.    From in or about October 2012 to in or about April 2013, COLLARE materially falsified law enforcement forms related to controlled buys conducted by Person #3.

18.    COLLARE enlisted Person #4 as a confidential informant in or about December 2015.

19.   In or about January 2016, COLLARE materially falsified at least one law enforcement form related to at least one controlled buy conducted by Person #4.

20.   COLLARE enlisted Person #5 as a confidential informant in or about August 2016.

21.   In or about August 2016, COLLARE materially falsified law enforcement forms related to controlled buys conducted by Person #5.

22.   COLLARE enlisted Person #6 as a confidential informant in or about August 2016.

23.   From in or about August 2016 to in or about April 2017, COLLARE materially falsified law enforcement forms related to controlled buys conducted by Person #6.

24.   COLLARE enlisted Person #7 as a confidential informant in or about January 2018.

25.   From in or about February 2018 to in or about March 2018, COLLARE materially falsified law enforcement forms related to controlled buys conducted by Person #7.

26.   COLLARE enlisted Person #8 as a confidential informant in or about March 2018.

## STATUTORY ALLEGATION

27.   On or about each of the dates set forth below, in the Middle District of Pennsylvania, the defendant,

## CHRISTOPHER COLLARE,

for the purpose of executing the above-described scheme and artifice to defraud, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| 1 | 8/18/2016 | JNET search related to Person #5 |
| 2 | 8/23/2016 | JNET search related to Person #6 |
| 3 | 8/29/2016 | JNET/WebCPIN search related to Person #9 |
| 4 | 8/31/2016 | JNET/WebCPIN search related to Person #5 |
| 5 | 12/17/2016 | JNET/WebCPIN search related to Person #10 |
| 6 | 4/21/2017 | JNET/WebCPIN search related to Person #11 |
| 7 | 1/9/2018 | JNET/WebCPIN search related to Person #7 |
| 8 | 2/1/2018 | JNET search related to Person #12 |
| 9 | 2/9/2018 | JNET/WebCPIN search related to Person #13 |

| 10 | 3/1/2018 | JNET/WebCPIN search related to Person #8 |
|----|----------|-------------------------------------------|
| 11 | 3/2/2018 | JNET/WebCPIN search related to Person #1 |
| 12 | 3/2/2018 | JNET search related to Person #8 |
| 13 | 3/2/2018 | JNET/WebCPIN search related to Person #2 |
| 14 | 3/2/2018 | JNET/WebCPIN search related to Person #7 |
| 15 | 3/13/2018 | JNET/WebCPIN search related to Person #14 |
| 16 | 3/13/2018 | JNET/WebCPIN search related to Person #15 |

All in violation of Title 18, United States Code, Sections 1343 and 1349.

## COUNTS 17 THROUGH 20
(Honest services mail fraud)

THE GRAND JURY FURTHER CHARGES:

28. The factual allegations of paragraphs 1-8 are incorporated here.

### THE SCHEME

29. Beginning on an unknown date, but at least by in or about December 2011, and continuing to on or about July 17, 2018, in the Middle District of Pennsylvania and elsewhere, COLLARE knowingly devised, intended to devise, and participated in a scheme and artifice to defraud and to deprive the Borough of Carlisle and its citizens, and Cumberland County, Pennsylvania, and its citizens, of their intangible right to the honest services of COLLARE through bribery.

### MANNER AND MEANS

It was part of the scheme that:

30. COLLARE benefited himself corruptly by using his official position as a Carlisle police officer and task force officer for the CCDTF and the FBI to obtain sex and sexual favors from Person #16 and Person #7 in exchange for agreeing to take actions in criminal

9

prosecutions brought by the Commonwealth of Pennsylvania against Person #17 and Person #18.

*Person #16*

31.   In or about December 2011, COLLARE met Person #16 when Person #16 posted an advertisement online seeking money in exchange for sex.  COLLARE contacted Person #16, and then picked Person #16 up in his vehicle.  COLLARE and Person #16 had sexual intercourse in COLLARE's vehicle in exchange for money.

32.   On other occasions between in or about December 2011 and in or about August 2014, COLLARE had sexual intercourse with Person #16 and, in exchange, provided Person #16 with money.  COLLARE occasionally also provided Person #16 with heroin following sexual intercourse.

33.   From no later than in or about August 2014 until at least in or about October 2015, Person #17 was Person #16's boyfriend.

34.   On or about August 28, 2014, COLLARE and other law enforcement officers executed a search of Person #17's residence.  Law enforcement officers seized controlled substances, including heroin, during the search.  COLLARE arrested Person #17.

35.    On or about September 29, 2014, the Commonwealth of Pennsylvania charged Person #17 in the Court of Common Pleas of Cumberland County with one count of the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, in violation of 35 Pennsylvania Revised Statutes § 780-113(a)(30).  The maximum statutory fine under Section 780-113 was $250,000.

36.    In or about June 2015, Person #16 asked COLLARE whether COLLARE would accept sex or money in exchange for COLLARE taking action, namely not appearing at the evidentiary suppression hearing in Person #17's case, to have the criminal charge against Person #17 dismissed.  COLLARE accepted Person #16's offer of sex, and COLLARE and Person #16 had sexual intercourse.

37.    In or about August 2015, Person #16 asked COLLARE to confirm the agreement between Person #16 and COLLARE that COLLARE would take action, namely to not appear at the evidentiary suppression hearing in Person #17's case, to have the criminal charge against Person #17 dismissed.  After COLLARE confirmed the agreement, Person #16 and COLLARE had sexual intercourse.

38.    On or about September 11, 2015, a Judge on the Court of Common Pleas of Cumberland County issued an order suppressing the evidence in Person #17's case (suppression order).  The suppression order identified COLLARE as the affiant in the case.  The suppression order precluded the Commonwealth of Pennsylvania from using any evidence obtained during the August 28, 2014, search of Person #17's residence in the Commonwealth's case against Person #17.

39.    On or about September 11, 2015, and following the suppression order, the Commonwealth of Pennsylvania moved to dismiss the charge against Person #17.  On or about the same day, the Judge who had entered the suppression order granted the motion and ordered the charge against Person #17 dismissed.

*Person #7*

40.    From no later than in or about December 2017 until at least in or about December 2018, Person #18 was Person #7's boyfriend.

41.    On or about December 2, 2017, COLLARE arrested Person #18.

12

42.    On or about December 3, 2017, December 21, 2017, and December 22, 2017, the Commonwealth of Pennsylvania charged Person #18 with delivering narcotics and unlawful gun possession.

43.    COLLARE enlisted Person #7 as a confidential informant in or about January 2018, and Person #7 subsequently performed controlled buys under COLLARE's supervision.

44.    In or about March 2018, COLLARE told Person #7 that if Person #7 "helped" COLLARE, COLLARE would take steps to reduce Person #18's potential sentence.  Person #7 understood COLLARE's reference to "help" to refer to sexual favors.

45.    In or about March 2018 and following the conversation recounted in the preceding paragraph, COLLARE reminded Person #7 that COLLARE could help reduce Person #18's sentence in exchange for Person #7 agreeing to help—that is, to provide sexual favors for— COLLARE.  COLLARE undid his pants, exposed his penis, and placed Person #7's hand on his penis.  In response to a question from Person #7 about Person #18's potential sentence, COLLARE stated that Person #18 would receive a sentence of time served and return home.  Person #7 then agreed to and did perform oral sex on COLLARE.

46.   On or about May 1, 2018, Person #18 entered a guilty plea to one count of unlawful delivery of narcotics.  On or about July 17, 2018, Person #18 was sentenced to 24 months in the state intermediate punishment program.

## STATUTORY ALLEGATION

47.   On or about each of the dates set forth below, in the Middle District of Pennsylvania, the defendant,

## CHRISTOPHER COLLARE,

for the purpose of executing the above-described scheme and artifice to defraud, and attempting to do so, knowingly caused to be deposited in a post office and authorized depository for mail matter to be delivered by the Postal Service the following matters, each matter constituting a separate count:

| COUNT | DATE | SENDER | DESCRIPTION |
|-------|------|--------|-------------|
| 17 | 9/11/2015 | Court of Common Pleas of Cumberland County, Pennsylvania | In re: Findings of Fact, Conclusions of Law and Order of Court |
| 18 | 9/11/2015 | Court of Common Pleas of Cumberland County, Pennsylvania | In re: Nol-Prossed Order of Court |

| 19 | 5/1/2018 | Court of Common Pleas of Cumberland County, Pennsylvania | In re: Nol-Prossed Order of Court |
| 20 | 7/17/2018 | Court of Common Pleas of Cumberland County, Pennsylvania | In re: Sentencing (via video) (State IP Program) |

All in violation of Title 18, United States Code, Sections 1341, 1346, and 1349.

## COUNT 21
### (Federal program bribery)

THE GRAND JURY FURTHER CHARGES:

48.    The factual allegations of paragraphs 1-8 and 30-39 are incorporated here.

49.    From in or about May 2015, to on or about September 11, 2015, in the Middle District of Pennsylvania, and elsewhere, the defendant,

### CHRISTOPHER COLLARE,

did corruptly solicit and demand for his own benefit, and accepted and agreed to accept, things of value from Person #16, that is, sex and sexual favors, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the Borough of Carlisle and Cumberland County, Pennsylvania, valued at $5,000 and more, that is, the criminal matter of Person #17 that involved a potential fine of $5,000 and more, and during that same one-year period the Borough of Carlisle and Cumberland County, Pennsylvania, both received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

16

All in violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT 22
### (Bribery)

THE GRAND JURY FURTHER CHARGES:

50.    The factual allegations of paragraphs 1-8 and 40-46 are incorporated here.

51.    Beginning in or about January 2018 and continuing until in or about May 2018, in the Middle District of Pennsylvania and elsewhere, the defendant,

### CHRISTOPHER COLLARE,

being a public official, did directly and indirectly corruptly demand, seek, receive, accept, and agree to accept a thing of value personally and from Person #7, namely sex and sexual favors, in return for being influenced in the performance of an official act, and being induced to do and omit to do any act in violation of his official duties.

All in violation of Title 18, United States Code, Section 201(b)(2).

## COUNT 23
(Distribution of heroin)

THE GRAND JURY FURTHER CHARGES:

52.     The factual allegations of paragraphs 1-26 are incorporated here.

53.     On or about January 22, 2016, in the Middle District of Pennsylvania, the defendant,

CHRISTOPHER COLLARE,

attempted to, and did knowingly and intentionally, distribute heroin, a Schedule I controlled substance, to Person #4.

All in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and 846.

COUNT 24
(False statement)

THE GRAND JURY FURTHER CHARGES:

54.   The factual allegations of paragraphs 1-26 are incorporated here.

55.   During the process of becoming a task force officer for the FBI's Capital City Safe Streets Task Force, COLLARE completed and submitted a Form SF-86 Questionnaire for National Security Positions (SF-86).

56.   In the SF-86, COLLARE acknowledged his understanding that "I have read the instructions and I understand that if I withhold, misrepresent, or falsify information on this form, I am subject to the penalties for inaccurate or false statement (per U.S. Criminal Code, Title 18, section 1001), denial or revocation of a security clearance, and/or removal and debarment from Federal Service."

57.   Or about November 14, 2015, in the Middle District of Pennsylvania, and elsewhere, the defendant,

CHRISTOPHER COLLARE,

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the

20

jurisdiction of the executive branch of the Government of the United States, by stating and representing to the United States Office of Personnel Management, on his SF-86, "No" in response to the question, "In the last seven (7) years, have you been involved in the illegal purchase, manufacture, cultivation, trafficking, production, transfer, shipping, receiving, handling or sale of any drug or controlled substance?," and by stating and representing on his SF-86 "No" in response to the question, "Have you EVER illegally used or otherwise been involved with a drug or controlled substance while employed as a law enforcement officer, prosecutor, or courtroom official; or while in a position directly and immediately affecting the public safety other than previously listed?"

58.    The statements and representations were false because, as COLLARE then and there knew, prior to submitting the SF-86, he had provided controlled substances for their personal use and money to purchase controlled substances for their personal use to, and permitted the illegal possession and illegal use of controlled substances by, Person #16 and confidential informants who worked for COLLARE and the CCDTF, including Person #1, Person #2, Person #4, and Person #8.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT 25
### (False statement)

THE GRAND JURY FURTHER CHARGES:

59.     The factual allegations of paragraphs 1-26 are incorporated here.

60.     On May 11, 2018, COLLARE was interviewed by special agents from the Department of Justice, Office of the Inspector General.

61.     Or about May 11, 2018, in the Middle District of Pennsylvania, the defendant,

### CHRISTOPHER COLLARE,

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating and representing to special agents of the Department of Justice, Office of the Inspector General that Person #4 did not work as a confidential informant for COLLARE and the CCDTF.

62.     The statements and representations were false because, as COLLARE then and there knew, Person #4 worked as a confidential informant for COLLARE and the CCDTF in or about January 2016.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT 26
(False statement)

THE GRAND JURY FURTHER CHARGES:

63.     The factual allegations of paragraphs 1-26 are incorporated here.

64.     Or about May 11, 2018, in the Middle District of Pennsylvania, the defendant,

CHRISTOPHER COLLARE,

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating and representing to special agents of the Department of Justice, Office of the Inspector General that COLLARE never had a sexual relationship with Person #4.

65.     The statements and representations were false because, as COLLARE then and there knew, prior to his May 11, 2018 interview, COLLARE and Person #4 had a sexual relationship.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT 27
### (False statement)

THE GRAND JURY FURTHER CHARGES:

66.    The factual allegations of paragraphs 1-26 are incorporated here.

67.    Or about May 11, 2018, in the Middle District of Pennsylvania, the defendant,

### CHRISTOPHER COLLARE,

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating and representing to special agents of the Department of Justice, Office of the Inspector General that COLLARE never provided to Person #4 controlled substances and money to purchase controlled substances.

68.    The statements and representations were false because, as COLLARE then and there knew, prior to his May 11, 2018 interview, COLLARE provided to Person #4 controlled substances and money to purchase controlled substances.

All in violation of Title 18, United States Code, Section 1001(a)(2).

<u>COUNT 28</u>
(False statement)

THE GRAND JURY FURTHER CHARGES:

69.   The factual allegations of paragraphs 1-26 are incorporated here.

70.   Or about May 11, 2018, in the Middle District of Pennsylvania, the defendant,

CHRISTOPHER COLLARE,

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating and representing to special agents of the Department of Justice, Office of the Inspector General that COLLARE never had a sexual relationship with confidential informants.

71.   The statements and representations were false because, as COLLARE then and there knew, prior to his May 11, 2018 interview, COLLARE had sexual relationships with confidential informants who worked for COLLARE and the CCDTF, including Person #2, Person #4, Person #7, and Person #8.

All in violation of Title 18, United States Code, Section 1001(a)(2).

<u>COUNT 29</u>
(False statement)

THE GRAND JURY FURTHER CHARGES:

72.    The factual allegations of paragraphs 1-26 are incorporated here.

73.    Or about May 11, 2018, in the Middle District of Pennsylvania, the defendant,

CHRISTOPHER COLLARE,

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating and representing to special agents of the Department of Justice, Office of the Inspector General that COLLARE never provided controlled substances to confidential informants.

74.    The statements and representations were false because, as COLLARE then and there knew, prior to his May 11, 2018 interview, COLLARE had provided controlled substances and money to purchase controlled substances to confidential informants who worked for COLLARE and the CCDTF, including Person #1, Person #2, Person #4, and Person #8.

27

All in violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL:

███████████████████

FOREPERSON, GRAND JURY

DATE   1/16/20

BRUCE D. BRANDLER
First Assistant U.S. Attorney
Middle District of Pennsylvania

Attorney for the United States,
Acting Under Authority Conferred
by 28 U.S.C. § 515

COREY R. AMUNDSON
Chief
Public Integrity Section
U.S. Department of Justice

By:

CARLO D. MARCHIOLI
PHILLIP J. CARABALLO
Assistant U.S. Attorneys
Middle District of Pennsylvania

JAMES I. PEARCE
Trial Attorney
Public Integrity Section
U.S. Department of Justice