**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:20-CR-00017 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| CHRISTOPHER COLLARE. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

This is a criminal case in which Defendant Christopher Collare ("Collare")
is charged in a twenty-nine count indictment with wire fraud, honest-services mail
fraud, federal program bribery, public official bribery, distribution of heroin, and
making a false statement for actions he allegedly performed in his role as a police
officer with the Carlisle Police Department ("CPD"). Before the court is Collare's
motion to dismiss Counts 1–22 of the indictment for failure to state an offense.
For the reasons that follow, the motion is granted with respect to Count 21 of the
indictment but denied in all other respects.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

On January 16, 2020, a grand jury indicted Collare for sixteen counts of wire
fraud under 18 U.S.C. §§ 1343 and 1349 (Counts 1–16); four counts of honest

---

[1] Because the instant motion to dismiss only seeks dismissal of Counts 1–22 of the twenty-nine
count indictment, this section will only provide the factual background that is relevant to those
counts.

1

services mail fraud under 18 U.S.C. §§ 1341, 1346, and 1349 (Counts 17–20); one count of federal program bribery under 18 U.S.C. § 666(a)(1)(B) (Count 21); one count of public official bribery under 18 U.S.C. § 201(b)(2) (Count 22); one count of distribution of heroin under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 (Count 23); and six counts of making a false statement under 18 U.S.C. § 1001(a)(2) (Counts 24–29).  (Doc. 1.)

According to the facts alleged in the indictment, Collare was an officer with the CPD from 1996 to 2018 and served as a member of the Cumberland County Drug Task Force ("CCDTF") from 2011 to 2018.  (*Id.* ¶¶ 1–2.)  During that time, Collare served as a member of the FBI's Capital City Safe Streets Task Force in Harrisburg, Pennsylvania.  (*Id.* ¶ 3.)  In performing his work for the CPD and the two task forces, Collare recruited and enlisted confidential informants to assist with drug investigations and supervised the confidential informants' participation in controlled buys of narcotics.  (*Id.* ¶¶ 5–6.)

Counts 1–16 of the indictment allege that Collare "knowingly devised, intended to devise, and participated in a scheme and artifice to defraud the Borough of Carlisle and the CCDTF, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises."  (*Id.* ¶ 9.)  The indictment alleges that as part of this scheme, Collare recruited confidential informants, materially falsified information on forms associated with

controlled buys, provided drugs to confidential informants for the purpose of developing sexual relationships with female confidential informants, and allowed confidential informants to retain drugs they obtained through controlled buys for the same purpose.  (*Id.* ¶ 10.)  The indictment provides dates on which Collare allegedly recruited certain confidential informants and on which he allegedly falsified documents related to those confidential informants.  (*See id.* ¶¶ 12–26.) The indictment then alleges that in furtherance of his scheme, Collare "caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals, pictures, and sounds."  (*Id.* ¶ 27.)  Specifically, the indictment alleges that Collare conducted sixteen searches through the Pennsylvania Justice Network ("JNET") to obtain information about confidential informants and about targets of drug investigations.  (*Id.* ¶¶ 11, 27.)

Counts 17–20 of the indictment allege that Collare "knowingly devised, intended to devise, and participated in a scheme and artifice to defraud and deprive the Borough of Carlisle and its citizens of their intangible right to the honest services of Collare through bribery."  (*Id.* ¶ 29.)  The indictment alleges that Collare used his official position as an officer with the CPD to obtain sexual favors from two individuals identified as Person #16 and Person #7 by agreeing to take certain actions in criminal prosecutions against the individuals' boyfriends, who are identified as Person #17 and Person #18.  (*Id.* ¶ 30.)

3

The indictment provides specific factual details that are relevant to the charges in Counts 17–20.  According to the indictment, Collare first met Person #16 after she posted an online advertisement seeking money in exchange for sex, at which point Collare picked up Person #16 in his car and she had sexual intercourse with him in exchange for money.  (*Id.* ¶ 31.)  Collare subsequently provided money and heroin to Person #16 in exchange for sexual intercourse on multiple occasions between December 2011 and August 2014.  (*Id.* ¶ 32.)

In August 2014, Collare and other officers searched the home of Person #17, who was Person #16's boyfriend during the time relevant to the indictment, and seized controlled substances, including heroin.  (*Id.* ¶ 34.)  Collare arrested Person #17, and Person #17 was then charged with one count of the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance in the Court of Common Pleas of Cumberland County.  (*Id.* ¶¶ 34–35.)  The maximum fine for such a charge under Pennsylvania law was $250,000.  (*Id.* ¶¶ 35.)  While Person #17's charge was pending, Person #16 offered Collare sexual intercourse or money in exchange for Collare's promise to not appear as a witness in Person #17's then-upcoming suppression hearing so that the charge against Person #17 would be dismissed.  (*Id.* ¶ 36.)  Collare accepted the offer and had sexual intercourse with Person #16.  (*Id.*)  Person #16 then asked Collare to confirm their agreement in August 2015 and Collare confirmed that in exchange for sexual

intercourse, he would not appear for Person #17's suppression hearing, at which point the individuals had sexual intercourse.  (*Id.* ¶ 37.)  Person #17's suppression hearing subsequently occurred, after which the judge presiding over Person #17's criminal case issued an order suppressing the evidence that was seized from Person #17's home.  (*Id.* ¶ 38.)  The charge against Person #17 was then dismissed on the same day.  (*Id.* ¶ 39.)

Collare's alleged actions with respect to the other pair of individuals— Person #7 and Person #18—began on December 2, 2017, when Collare arrested Person #18.  (*Id.* ¶ 41.)  As a result of the arrest, Person #18 was charged with delivering narcotics and unlawful gun possession.  (*Id.*)

Collare enlisted Person #7, who was Person #18's girlfriend at all relevant times, as a confidential informant in January 2018.  (*Id.* ¶ 43.)  In March 2018, Collare told Person #7 that if she "helped" Collare, he would take steps to reduce Person #18's potential sentence.  (*Id.* ¶ 44.)  Collare then "undid his pants, exposed his penis, and placed Person #7's hand on his penis."  (*Id.* ¶ 45.)  At this point, Person #7 asked Collare about Person #18's potential sentence and Collare told her that Person #18 would receive a sentence of time served and be allowed to return home.  (*Id.*)  Person #7 then performed oral sex on Collare.  (*Id.*)  Person #18 subsequently pleaded guilty to one count of unlawful delivery of narcotics and was

sentenced to twenty-four months in the state intermediate punishment program. (*Id.* ¶ 46.)

Counts 17–20 allege that in furtherance of his scheme to deprive the Borough of Carlisle of his honest services, Collare "knowingly caused to be deposited in a post office and authorized depository for mail to be delivered by the Postal Service" four court documents in violation of 18 U.S.C. §§ 1341, 1346, and 1349. (*Id.* ¶ 47.)

Count 21 alleges that Collare accepted a bribe in violation of 18 U.S.C. § 666(a)(1)(B) by accepting sex and sexual favors while "intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the Borough of Carlisle and Cumberland County, Pennsylvania valued at $5,000 or more." (*Id.* ¶ 48.) Count 22 similarly alleges that Collare accepted a bribe in violation of 18 U.S.C. § 201(b)(2) by accepting sex and sexual favors in exchange for "being influenced in the performance of an official act, and being induced to do and omit to do any act in violation of his duties." (*Id.* ¶ 49.)

Collare moved to dismiss Counts 1–22 of the indictment on April 20, 2020. (Docs. 24–25.) The government filed a brief in opposition to the motion to dismiss on May 7, 2020. (Doc. 30.) Collare then filed a notice of supplemental authority under Local Rule 7.36 on May 8, 2020, advising the court of the Supreme Court's decision in *Kelly v. United States*, 590 U.S. __, 140 S. Ct. 1565 (2020). (Doc. 31.)

The government filed a response to the notice of supplemental authority on May 15, 2020, and Collare then filed a reply to the government's response on May 22, 2020.  (Docs. 34, 37.)  Collare's motion to dismiss is now ripe for the court's disposition.

## JURISDICTION

This court has jurisdiction under 18 U.S.C. § 3231, which gives district courts original jurisdiction over cases in which offenses against the laws of the United States are alleged.

## STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 12(b)(3)(B), a defendant may move to dismiss an indictment for duplicity, multiplicity, lack of specificity, improper joinder, or failure to state an offense.  Fed. R. Crim. P. 12(b)(3)(B).  To state an offense, an indictment must provide "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  The indictment also must provide "the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."  *Id.*

An indictment is sufficient to survive a motion to dismiss for failure to state an offense if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3)

allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Fattah*, 858 F.3d 801, 814 (3d Cir. 2017) (quoting *United States v. Stevenson*, 832 F.3d 412, 423 (3d Cir. 2016)).  "'No greater specificity than the statutory language is required so long as there is sufficient factual orientation' to permit a defendant to prepare his defense and invoke double jeopardy." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (quoting *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007)).  Thus, an indictment is generally sufficient where it "informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." *Id.* (quoting *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005)).  "In contrast, if an indictment fails to charge an essential element of the crime, it fails to state an offense." *Id.* (citing *United States v. Wander*, 601 F.2d 1251, 1259 (3d Cir. 1979)).

In reviewing a motion to dismiss, a district court must consider only the facts alleged in the indictment.  *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007).  A pretrial motion to dismiss is "not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. Gilette*, 738 F.3d 63, 74 (3d Cir. 2013) (quoting *Huet*, 665 F.3d at 595).  The court's review is therefore limited to determining whether, assuming the facts alleged in the indictment are true, "a jury could find that the defendant committed the offense for which he was

charged." *Huet*, 665 F.3d at 596.  A district court should generally uphold an indictment "unless it is so defective that it does not, by any reasonable construction, charge an offense." *United States v. Willis*, 844 F.3d 155, 162 (3d Cir. 2016) (quoting *Vitillo*, 490 F.3d at 324).

## DISCUSSION

Collare's motion seeks the dismissal of Counts 1–22 for failure to state an offense.  The court will address Collare's arguments for dismissal seriatim.

### A. The Indictment States an Offense for Wire Fraud

Collare's first argument is that Counts 1–16 of the indictment should be dismissed for failure to state an offense.  (Doc. 25 at 3–6.) Counts 1–16 allege wire fraud in violation of 18 U.S.C. § 1343, which states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.  To state an offense under the statute, an indictment must allege "that the defendant 'willfully participated in a scheme or artifice to defraud,' with intent to defraud, and used a wire to further that scheme." *United States v. James*, 955 F.3d 336, 342 (3d Cir. 2020) (quoting *United States v. Andrews*, 681 F.3d 509, 518 (3d Cir. 2012)).  Because the statute applies only to property fraud, the wire

fraud must have been for the purpose of obtaining money or property.  *Kelly*, 140 S. Ct. at 1571 (citing *Cleveland v. United States*, 531 U.S. 12 (2000)).

In this case, the indictment alleges that Collare participated in a scheme to defraud the Borough of Carlisle and the CCDTF with intent to defraud, that the purpose of this scheme was to obtain sexual favors from female confidential informants, and that he used wire communications in furtherance of the scheme. (*See* Doc. 1 ¶¶ 9–27.)  The indictment is therefore sufficient on its face to state a claim for wire fraud under § 1343.

Although the indictment facially states an offense for wire fraud, Collare argues that the JNET searches he allegedly conducted cannot support the charges in Counts 1–16 because he conducted such searches routinely as an officer with the CPD and the indictment "fails to allege or establish how such searches were part of a scheme or artifice to defraud or for the [purpose of] obtaining money or property by means of false or fraudulent pretenses."  (*Id.* at 5.)

This argument is without merit.  First, Collare is incorrect that the indictment fails to allege how the JNET searches were part of Collare's scheme to defraud.  The indictment alleges that Collare used JNET searches "to obtain information about the confidential informants and the targets of the drug investigations for which Collare had enlisted the confidential informants."  (Doc. 1 ¶ 11.)  Second, the fact that Carlisle police officers routinely use JNET searches to

obtain information does not warrant dismissal of Counts 1–16.  An innocent communication can form the basis for a wire fraud prosecution.  *United States v. Dobson*, 419 F.3d 231, 241 & n.11 (3d Cir. 2005) (citing *Schmuck v. United States*, 489 U.S. 705, 715 (1989)).[2]  Whether the communication furthered the scheme or was an essential part of the scheme is ultimately a question for the jury; at this stage, the government must only allege that Collare used a wire to further a scheme to defraud.  *James*, 955 F.3d at 342.  Because the government has done that here, Collare's argument fails.

Collare additionally argues in his notice of supplemental authority that the indictment fails under *Kelly*, 140 S. Ct. at 1565, because the alleged goal of Collare's scheme was not to obtain money or property.  (Doc. 32; *see also* Doc. 37.)  In *Kelly*, the Supreme Court considered two wire fraud convictions arising from the so-called Bridgegate scandal, in which public officials who were politically connected to the administration of then-New Jersey governor Chris Christie diverted traffic on the George Washington Bridge to punish the mayor of Fort Lee, New Jersey for not supporting the governor's reelection campaign.

---

[2] Although *Dobson* and *Schmuck* were mail fraud cases, they can be cited to interpret the wire fraud statute.  *See United States v. Yusuf*, 536 F.3d 178, 188 n.14 (3d Cir. 2008) ("[T]he federal wire  fraud and mail fraud statutes 'differ only in form, not in substance, and cases interpreting one govern the other as well.'" (quoting *United States v. Morelli*, 169 F.3d 798, 806 n.9 (3d Cir. 1999))).

*Kelly*, 140 S. Ct. at 1568–71.  The Court overturned the convictions, holding that the defendants' actions were not done for the purpose of obtaining money or property and therefore did not constitute wire fraud.  *Id.* at 1574.  Collare argues that Counts 1–16 of the indictment in this case should be dismissed under *Kelly* because the alleged goals of Collare's scheme—developing sexual relationships with female confidential informants and assisting his professional productivity— do not amount to money or property.  (Doc. 31 at 1.)

The government attempts to distinguish this case from *Kelly* because this case "involves the deprivation of actual money and physical property."  (Doc. 34 at 2.)  The government argues that the "alleged object of the scheme was to obtain traditional money and property—official funds and drugs" and that sexual relationships and professional productivity were the "ultimate motivation," but not the object of Collare's scheme.  (*Id.*)

The court disagrees with the government's argument.  Drawing a distinction between the "object" of Collare's scheme and the "ultimate motivation" of the scheme does not distinguish this case from *Kelly*.  In *Kelly*, the Court acknowledged that the defendants' scheme led to the misuse of time and labor for employees of the New York and New Jersey Port Authority, but held that such misuse of the employees' time could not support the defendants' wire fraud convictions because the misuse of the employees' time was an "incidental

byproduct" of the scheme and not the goal of the scheme.  *Kelly*, 140 S. Ct. at

1574.  Similarly here, the indictment alleges that Collare misappropriated money

and drugs, but that the misappropriation was "for the purpose of developing sexual

relationships with female confidential informants and assisting his professional

productivity."  (Doc. 1 ¶ 10.)  Thus, like *Kelly*, the misappropriation of government

resources was an "incidental byproduct" of Collare's scheme and not the object of

the scheme.  *Kelly*, 140 S. Ct. at 1574.

Nevertheless, the court will not dismiss Counts 1–16 of the indictment,

because, unlike the defendants in *Kelly*, Collare's alleged goal was to obtain

money or property.  The definition of property under the federal wire fraud statute

includes services.  *See, e.g.*, *United States v. Kelerchian*, 937 F.3d 895, 913 (7th

Cir. 2019) (noting that the definition of property under the federal wire fraud

statute "is not so narrow as to exclude any tangible good or service for which fair

market value is paid").  *Kelly* did not alter this conclusion: indeed, the Court

clarified in dicta that a defendant could be convicted of wire fraud if the "entire

point" of the defendant's scheme was to obtain services.  *Kelly*, 140 S. Ct. at 1573.

The indictment in this case alleges that one of the goals of Collare's scheme was to

obtain sexual favors from confidential informants.  (Doc. 1 ¶ 10.)  He therefore

sought to obtain services from confidential informants, which is sufficient to show

that the goal of his scheme was to obtain money or property.  Accordingly, the motion to dismiss Counts 1–16 is denied.

## B. The Indictment States an Offense for Honest Services Mail Fraud

The court next turns its attention to Collare's motion to dismiss Counts 17–20 of the indictment, which bring charges for honest services mail fraud under 18 U.S.C. §§ 1341, 1346, and 1349.  To state an offense for mail fraud under those sections, an indictment must allege "(1) a scheme to defraud; (2) use of the mails to further that scheme; and (3) fraudulent intent."  *United States v. Wright*, 665 F.3d 560, 572–73 (3d Cir. 2012) (quoting *United States v. Jimenez*, 513 F.3d 62, 81 (3d Cir. 2008)).  As with wire fraud, the scheme to defraud must be "for the purpose of obtaining money or property."  *Yusuf*, 536 F.3d at 187.

Under § 1346, a scheme or artifice to defraud "includes a scheme or artifice to deprive another of the intangible right of honest services."  18 U.S.C. § 1346. This statute, however, applies only to cases involving bribe or kickback schemes. *Skilling v. United States*, 561 U.S. 358, 409 (2010).  Thus, an indictment charging mail fraud must allege that the defendant engaged in a bribe or kickback scheme. *Id.*

Collare argues that Counts 17–20 should be dismissed because the indictment fails to allege the existence of a scheme to defraud.  (Doc. 25 at 7, 9.) Collare notes that the mail fraud charges against him in Counts 17–18 are based on

14

a promise he made to not attend a suppression hearing, but notes that he did in fact attend the hearing and testified as a witness. (*Id.*) Thus, Collare argues, the mail fraud charges should be dismissed because "he took no action which deprived another of the intangible right to honest services." (*Id.*) Collare similarly argues that the mail fraud charges in Counts 19–20 should be dismissed because they are based on a promise Collare allegedly made to help Person #18 receive a reduced sentence but the indictment "fails to state what action or omission Mr. Collare took which caused" Person #18's sentence to be reduced. (*Id.* at 8–9.) He additionally argues that the charges in Counts 17–20 should be dismissed because the alleged mailing—court documents sent after the hearings had already happened—were too attenuated from the alleged wrongdoing to be considered part of the scheme to defraud. (*Id.* at 7–10.)

The government argues that the indictment sufficiently alleges a scheme to defraud because it alleges that Collare accepted a bribe by agreeing to accept sexual favors from Person #7 and Person #16 in exchange for promises to help Person #17 and Person #18 in their pending criminal cases. (Doc. 30 at 19–20.)

The court agrees with the government. The indictment alleges that Collare engaged in a scheme to defraud by accepting bribes in exchange for promising to perform his official duties in a certain way. This is sufficient to state a claim for honest services mail fraud. Whether Collare ultimately took the promised actions

is immaterial, because a bribe is completed when an individual accepts money or property in exchange "for a promise to act in a certain way." *United States v. Brewster*, 408 U.S. 501, 526 (1972).

Collare's argument that the alleged mailings are too attenuated from the alleged fraud to support mail fraud charges also fails. As with the wire fraud charges in Counts 1–16, an innocent mailing can support a mail fraud charge. *See Schmuck*, 489 U.S. at 715; *Dobson*, 419 F.3d at 241 n.11. The indictment alleges that Collare used the mail in furtherance of a scheme to defraud, which is sufficient to state an offense for mail fraud. *Wright*, 665 F.3d at 572–73. Accordingly, Collare's motion to dismiss Counts 17–20 of the indictment is denied.

## C. The Indictment Fails to State an Offense for Federal Program Bribery

Collare next moves to dismiss Count 21 of the indictment, which charges Collare with federal program bribery in violation of 18 U.S.C. § 666(a)(1)(B). Under that statute, an agent of a government organization commits a crime when he:

> corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more. . . .

*Id.*  The statute only applies where the "organization, government, or agency

receives, in any one year period, benefits in excess of $10,000 under a Federal

program involving a grant, contract, subsidy, loan, guarantee, insurance, or other

form of Federal assistance."  *Id.* § 666(b).

United States circuit courts have split as to how the $5,000 threshold under §

666 is computed, with some courts holding that the $5,000 refers to the value of

the bribe, while other courts holding that the $5,000 refers to the value of the

business, transaction, or series of transactions.  *See United States v. Fernandez*,

722 F.3d 1, 12 (1st Cir. 2013) (collecting cases); *see also United States v. Bravo-*

*Fernandez*, 246 F. Supp. 3d 531, 538 (D.P.R. 2017) (discussing the split).  The

Third Circuit is in the first group, stating that "§ 666 criminalizes the acceptance of

a bribe of $5,000 or more by a government agent of a local government that

receives more than $10,000 a year in federal funds if the agent intends to be

influenced by the bribe when making a decision to enter into business on behalf of

the government."  *Willis*, 844 F.3d at 163 (emphasis omitted).

In this case, the indictment alleges that Collare, acting as an agent of the

CPD, accepted and agreed to accept sexual favors from Person #16 intending to be

influenced in connection with Person #17's then-pending criminal matter.  (Doc. 1

¶ 49.)  The indictment alleges that the Borough of Carlisle and Cumberland County

both received federal benefits in excess of $10,000, and alleges that the pending

17

criminal matter involved a thing that was valued at more than $5,000—namely the potential fine in Person #17's criminal case, which could have been as much as $250,000. (*See Id.* ¶¶ 35, 49.)

Collare argues that Count 21 should be dismissed for failure to allege a thing of value worth more than $5,000. (Doc. 25 at 10.) Collare argues that "imposition of the maximum fine or anything close to it is virtually unheard of in Pennsylvania courts, particularly on drug trafficking offenses where maximum fines are often hundreds of thousands of dollars." (*Id.* at 10–11.) Collare accordingly argues that "[s]peculation and assumption about what the hypothetical fine would have been . . . is insufficient to establish this element." (*Id.* at 11.)

The government contends that the $5,000 threshold under § 666 is met here because Person #17 was subject to a possible fine of up to $250,000. (Doc. 30 at 24.) Collare's argument that fines of $5,000 or more are rarely imposed is, according to the government, an evidentiary argument that does not present a proper basis for dismissal. (*Id.* at 25.)

The court agrees with the government that Collare's argument raises a factual challenge that cannot be decided on a motion to dismiss. Nevertheless, although the argument was not raised in Collare's motion to dismiss, the court finds that dismissal of Count 21 is proper under *Willis*, 844 F.3d at 163. In *Willis*, the Third Circuit clarified that "§ 666 criminalizes the acceptance of a bribe of

$5,000 or more by a government agent of a local government that receives more than $10,000 a year in federal funds if the agent intends to be influenced by the bribe when making a decision to enter into business on behalf of the government." *Id.* Under *Willis*, the $5,000 threshold under § 666 must be met by the value of the bribe, rather than the value of the business, transaction, or series of transactions. *Id.* Here, there is no allegation in the indictment that the value of the bribe Collare received was $5,000 or more. (*See* Doc. 1.) Accordingly, Count 21 is dismissed under *Willis*.

### D. The Indictment States an Offense for Public Official Bribery

Finally, the court will consider Collare's motion to dismiss Count 22 of the indictment, which charges public official bribery under 18 U.S.C. § 201(b)(2). Under that statute it is a crime when a public official:

> directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for:
>
> > **(A)** being influenced in the performance of any official act;
> >
> > **(B)** being influenced to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or
> >
> > **(C)** being induced to do or omit to do any act in violation of the official duty of such official or person;

18 U.S.C. § 201(b)(2).

Collare argues that Count 22 should be dismissed because, as a municipal employee, he does not qualify as a public official under § 201.  (Doc. 25 at 11–12.) The government argues that Collare qualifies as a public official because he served on an FBI task force during the period relevant to the indictment.  (Doc. 30 at 26.)

Under § 201(a)(1), a "public official" is defined as a:

> Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror.

18 U.S.C. § 201(a)(1).  The Supreme Court has clarified that to qualify as a public official, "an individual must possess some degree of official responsibility for carrying out a federal program or policy."  *Dixson v. United States*, 465 U.S. 482, 499 (1984).

The indictment in this case alleges that Collare was a member of an FBI task force during the period relevant to the indictment, and that, through his membership in that task force, he investigated violent crimes in the city of Harrisburg on the FBI's behalf.  (Doc. 1 ¶ 3.)  This is sufficient to allege that he possessed "some degree of official responsibility for carrying out a federal program or policy."  *Dixson*, 465 U.S. at 499.  Although Collare argues that the FBI's "material support" does not establish that he was acting "under or by

authority" of the United States, this is a factual challenge that the court cannot resolve on a motion to dismiss.  The indictment therefore sufficiently alleges that Collare was a public official.

Collare additionally argues that he did not perform an official act as required for criminal liability under § 201.  (*Id.* at 13.)  The government argues that Collare's participation in Person #18's sentencing hearing constitutes an official act under the statute.  (*Id.* at 28–29.)  The government also notes that any purported lack of an official act does not address the indictment's other theory of liability under § 201, which is that Collare accepted sexual favors in exchange for "being induced to do and omit to do any act in violation of his official duties" under § 201(b)(2)(C).

Section 201 defines an official act as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." 18 U.S.C. § 201(a)(3).  The Supreme Court expanded on the definition of an official act in *McDonnell v. United States*, 579 U.S. __, 136 S. Ct. 2355 (2016).  In that case, the Court stated that an official act is:

> a decision or action on a "question, matter, cause, suit, proceeding or controversy."  The "question, matter, cause, suit, proceeding or controversy" must involve a formal exercise of governmental power

that is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee.  It must also be something specific and focused that is "pending" or "may by law be brought" before a public official.  To qualify as an "official act," the public official must make a decision or take an action on that "question, matter, cause, suit, proceeding or controversy," or agree to do so.  That decision or action may include using his official position to exert pressure on another official to perform an "official act," or to advise another official, knowing or intending that such advice will form the basis for an "official act" by another official.

*Id.* at 2371–72.

The indictment in this case alleges that Collare agreed to take action to help Person #18 receive a favorable outcome in his criminal proceeding in exchange for sexual favors from Person #7.  (Doc. 1 ¶¶ 44–45.)  Such an agreement to take an action on a "question, matter, cause, suit, proceeding, or controversy" is sufficient to allege an official action.  *McDonnell*, 136 S. Ct. at 2371.  Whether Collare ultimately did anything to help Person #18 receive a favorable outcome is irrelevant: an allegation that an official agreed to take an action is sufficient to allege an official action under § 201, regardless of whether the official ultimately performs the promised action.  *Cordaro v. United States*, 933 F.3d 232, 243 (3d Cir. 2019).  Accordingly, Collare's motion to dismiss Count 22 is denied.

## CONCLUSION

For the foregoing reasons, Collare's motion to dismiss (Doc. 24) is granted with respect to Count 21 of the indictment but denied in all other respects.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: May 26, 2020