IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:20-CR-00017 |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER COLLARE. | : | Judge Jennifer P. Wilson |

**<u>MEMORANDUM</u>**

This is a criminal case in which Defendant Christopher Collare ("Collare") was charged in a twenty-nine count indictment with wire fraud, honest-services mail fraud, federal program bribery, public official bribery, drug distribution, and making a false statement for actions he allegedly performed in his role as a police officer with the Carlisle Police Department. On July 16, 2021, following a nine-day jury trial, Collare was convicted of bribery, drug distribution, and making false statements. The case is presently before the court on Collare's motion for judgment of acquittal on Count 21, which charged federal program bribery, in violation of 18 U.S.C. § 666. (Doc. 115.) Because the court concludes that sufficient evidence supports the jury's conclusion that the business or transaction for which the defendant accepted a bribe had a value of at least $5,000, the court will deny the motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On January 16, 2020, a grand jury indicted Collare for sixteen counts of wire fraud under 18 U.S.C. §§ 1343 and 1349 (Counts 1–16); four counts of honest services mail fraud under 18 U.S.C. §§ 1341, 1346, and 1349 (Counts 17–20); one count of federal program bribery under 18 U.S.C. § 666(a)(1)(B) (Count 21); one count of public official bribery under 18 U.S.C. § 201(b)(2) (Count 22); one count of distribution of heroin under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 (Count 23); and six counts of making a false statement under 18 U.S.C. § 1001(a)(2) (Counts 24–29).  (Doc. 1.)  Counts 17 and 18 were dismissed prior to trial.  (Doc. 76.)

Collare filed a pretrial motion to dismiss Counts 1 through 22 of the indictment.  (Doc. 24.)  The court issued a memorandum and order granting Collare's motion to dismiss Count 21, and otherwise denying the motion.  (Docs. 38, 39.)  However, upon review of the Government's motion for reconsideration, the court reinstated Count 21.  (Docs. 43, 44.)

On July 16, 2021, following a nine-day jury trial, the jury convicted Collare of one count of federal program bribery (Count 21), one count of bribery (Count 22), one count of drug distribution (count 23), and six counts of making false statements (Counts 24 through 29), and acquitted Collare of the remaining counts. (Doc. 100.)

The evidence at trial established that Collare was an officer with the Carlisle Police Department ("CPD") from 1996 to 2018 and served as a member of the Cumberland County Drug Task Force ("CCDTF") from 2011 to 2018. During that time, Collare served as a member of the FBI's Capital City Safe Streets Task Force in Harrisburg, Pennsylvania. In performing his work for the CPD and the two task forces, Collare recruited and enlisted confidential informants to assist with drug investigations and supervised the confidential informants' participation in controlled buys of narcotics.

As relevant to the present motion, Count 21 of the indictment alleged that Collare accepted a bribe in violation of 18 U.S.C. § 666(a)(1)(B) by accepting sexual favors from Ashley Barrick while "intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the Borough of Carlisle and Cumberland County, Pennsylvania valued at $5,000 and more, that is, the criminal matter of [Alex Nelms] that involved a potential fine of $5,000 and more, and during that same one-year period the Borough of Carlisle and Cumberland County, Pennsylvania, both received in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." (Doc. 1 ¶ 48.)

During trial, the evidence established that in or around 2012, Collare responded to an advertisement posted by Barrick, who offered sex in return for

3

money.  (Doc. 110, pp. 77–78.[1])  Barrick had sex on several occasions with Collare in return for cash and heroin.  (*Id.*, pp. 80–87.)  Barrick learned that Collare was a police officer.  (*Id.*, p. 87.)

In the Summer of 2014, Barrick was dating Alex Nelms.  (*Id.*, p. 89.)  Nelms and Barrick sold drugs and lived together.  (*Id.*, pp. 90, 92.)  During that Summer, Collare told Barrick that the CPD received a tip that Nelms had guns and they were going to use his parole officer to get inside his house.  (*Id.*, p. 91.)  Nelms was arrested on August 28, 2014, following a search warrant executed at his home.  (*Id.*, pp. 94–95; Gov. Ex. 50.1.)  Bail was set at $100,000.  (Doc. 110, p. 96; Gov. Ex. 50.1.)  Nelms was charged with unlawful delivery, manufacture, or possession with intent to deliver a schedule I controlled substance, heroin.  (Doc. 110, p. 99; Gov. Ex. 50.15.)  The maximum fine associated with this charge was $500,000.  (*Id.*)

During a visit with Nelms in prison, Barrick learned that Collare was the arresting officer.  (Doc. 110, p. 100.)  Barrick decided to contact Collare to see what she could do with Collare to make Nelms's case "go away."  (*Id.*, pp. 100–01.)  On June 23, 2015, Nelms's defense attorney filed a motion to suppress evidence, and a suppression hearing was convened on September 11, 2015.  (*Id.*,

---

[1] The court references the page number on the CM/ECF header for convenience.

pp. 104–05; Gov. Ex. 50.2.)  Barrick made contact with Collare sometime prior to the hearing to ask Collare not to show up at Nelms's suppression hearing in return for having sex with him.  Barrick believed that Collare not showing up at the suppression hearing would cause the charge against Nelms to be dismissed.  (Doc. 110, pp. 105–07.)  Collare picked Barrick up, and she offered to have sex with him in return for him not showing up at Nelms's hearing.  Collare agreed and they had sex.  (*Id.*, pp. 107–10.)  Barrick and Collare met and had sex a second time to confirm the agreement.  (*Id.*, pp. 111–13.)  Despite his agreement with Barrick, Collare appeared at Nelms's suppression hearing, but the suppression motion was granted in any event for reasons unrelated to Collare's testimony.  (*Id.*, pp. 114–18, 120–21; Gov. Exs. 50.9, 50. 12.)

Prior to trial, the parties entered into a stipulation that states, in pertinent part: "A person convicted of the Unlawful Delivery, Manufacture, or Possession with Intent to Deliver or Manufacture a Schedule I Controlled Substance, in violation of 35 P.S. § 780-113(a)(30), may be fined in excess of $5,000, pursuant to 35 P.S. § 780-113(f)(1)."  (Doc. 81.)  During trial, Cumberland County Assistant District Attorney Courtney Hair LaRue testified that Alex Nelms faced a maximum fine of $500,000, but that, as a practical matter, Cumberland County judges typically set fines at a far lower amount than the maximum, and the amount of the fine is within the discretion of the judge.  (Doc. 110, pp. 214, 261.)  In fact, she

said that when a defendant is sentenced to state prison, the Cumberland County judges rarely impose a fine based on inability to pay a fine while incarcerated, and the fine is generally in the range of $25 to $100, if any fine is imposed. (*Id.*, p. 254.)

Following his conviction on certain counts on July 16, 2021, Collare moved for judgment of acquittal on Count 21 pursuant to Federal Rule of Criminal Procedure 29(c) on July 30, 2021, and filed a brief in support on the same date. (Docs. 115, 116.) The Government filed a brief in opposition on August 18, 2021. (Doc. 117.) Collare filed a reply brief, Doc. 118, thus making this motion ripe for review.

## JURISDICTION

This court has jurisdiction under 18 U.S.C. § 3231, which gives district courts original jurisdiction over cases in which offenses against the laws of the United States are alleged.

## STANDARD OF REVIEW

In ruling on a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, the court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (quoting

*United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)).  The court must be careful to find that evidence is insufficient only when "the prosecution's failure is clear."  *Id.* at 477.  In addition, the court must not usurp the jury's role "by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury."  *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005).

## DISCUSSION

Collare argues that judgment of acquittal should be granted with respect to Count 21 because the jury's verdict finding Collare guilty on this count is not supported by sufficient evidence.  Specifically, Collare contends that there was insufficient evidence to support a finding that Collare's conduct involved "any thing of value of $5,000 or more" as required under 18 U.S.C. § 666(a)(1)(B) (the "thing of value" element).  Collare does not challenge the sufficiency of the evidence with respect to the remaining elements.  In response, the Government asserts that the evidence presented during the trial established the "thing of value" element by showing that Nelms's criminal matter was valued at $5,000 or more.

Count 21 charged Collare with federal program bribery in violation of 18 U.S.C. § 666, which states that an agent of a government organization commits a crime when he:

> corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more. . . .

18 U.S.C. § 666(a)(1)(B).  With respect to the "thing of value" element, it is the value of the business, transaction, or series of transactions that determines whether the $5,000 element of § 666 is satisfied.  *United States v. Zwick*, 199 F.3d 672, 689–90 (3d Cir. 1999).  The value is not necessarily measured from the perspective of the organization, government, or agency, and it is not necessarily measured by the value of the bribe.  *Id.* at 689 (citing numerous cases approvingly).  The Third Circuit is in accord with the Fifth Circuit in finding that the $5,000 threshold for the "thing of value" element serves the purpose of limiting the application of this statute to "significant corruption transactions," rather than to "restrict the manner in which or the perspective from which that value is to be calculated."  *Id.* at 690 (citing *United States v. Marmolejo*, 89 F.3d 1185 (5th Cir. 1996)).

      In this case, the "transaction" at issue that gave rise to Collare accepting sex from Barrick is the dismissal of the pending criminal case against Barrick's then-boyfriend Alex Nelms in Cumberland County, Pennsylvania.  The question is whether this particular pending criminal case is a "thing of value of $5,000 or more."  Clearly, the dismissal of a criminal case is a "thing of value."  However, it is the sort of intangible benefit for which it can be difficult to determine a

monetary value. It is useful to look at how this valuation issue has been addressed by the Third Circuit and other appellate courts.

In *Zwick*, the "transactions" at issue were a land use permit and a site plan approval. *Id.* at 689. In addressing Zwick's argument that there was insufficient evidence that the transactions were worth at least $5,000, the Third Circuit examined the value of the bribe, the amount the bribe-givers could lose if they did not obtain the permit, the overall value of the project, the amount of tax benefits resulting from the project, and the amount of the permit fees that would be paid to allow the project to proceed. *Id.* at 690. By any of these measures, the court determined that the "transactions" were "clearly a significant transaction within the intended reach of the statute" and there was substantial evidence from which the jury could find that the $5,000 element was satisfied. *Id.*

In a case involving certificates of occupancy for four homes, the Seventh Circuit discussed the approaches utilized by courts to determine the value of the subject matter of a bribe when it is an intangible benefit or the value is otherwise difficult to determine. *See United States v. Owens*, 697 F.3d 657, 659–60 (7th Cir. 2012). The court noted that in these kinds of cases, courts look at the value of the bribe and/or the value of the benefit for the bribe-giver or an interested third party if the bribe is successful. *Id.*

Finally, in a case in which the subject matter of the bribe was the bond set by the defendant trial court judge for the bribe-giver lawyer's clients (another intangible benefit), the Fifth Circuit found that the amount of the bribe is probative but not determinative of the valuation, and there are multiple potential valuation methods. *United States v. Delgado*, 984 F.3d 435, 447–48 (5th Cir. 2021). The Fifth Circuit noted that valuation methods include the bribe amount, the market value of the subject matter of the bribe, the value of the benefit to the bribe-giver if the bribe is successful, and the value of the benefit to a third party who has an immediate interest in the transaction. *Id*. (collecting cases). In *Delgado*, the Fifth Circuit found that these valuation methods are not in conflict, and generally a court should not disturb a jury's verdict if there is sufficient evidence to support the verdict under any of these methods. *Id*. at 448.

In the Indictment and at trial in this case, the Government focused on the fact that the potential fine for the criminal charge against Nelms was at least $5,000. In pointing to the value of the potential fine, it appears that the Government is relying on the value of the benefit (dismissal of the criminal case resulting in not paying a fine) to a third party who has an immediate interest in the transaction (Barrick's then-boyfriend, Nelms, who was the accused in the criminal case). In light of the review of valuation methods discussed above, the court

concludes that this is an appropriate valuation method for the intangible benefit in this case.

However, Collare argues that the evidence was not sufficient to prove that the value was $5,000 or more because the "potential fine was never proven and the jury necessarily relied on speculation as to the actual fine that would have been imposed." (Doc. 116, p. 5.) Collare asserts that the statutory potential of a fine up to $500,000 is insufficient to establish the $5,000 threshold in light of the testimony from Assistant District Attorney Courtney Hair LaRue that fines are rarely imposed on defendants convicted of possession with intent to deliver in Cumberland County, particularly when the defendant is facing state prison time and inability to pay. (*Id.*, pp. 5–6.) Collare maintains that the only way to conclude that the "thing of value" element was satisfied was for the jury to speculate that, had Nelms been convicted, the sentencing judge would have imposed a fine of at least $5,000, and that the record in this case shows that a fine in this amount was highly improbable. (*Id.*, p. 6.)

The Government responds that evidence established that the maximum fine to which Nelms was potentially subject was $500,000. (Doc. 117, p. 8.) The Government asserts that based on that evidence alone, a reasonable juror could find

the "thing of value" element satisfied.[2] (*Id.*) In response to Collare's argument that the amount of the fine that may have been imposed on Nelms is speculative, the Government asserts that Collare misses the point. The Government argues: "[T]he question before the jury on the transactional element was not whether Nelms was likely to face a criminal fine if convicted; it was whether Nelms's criminal case 'had a value of at least $5,000.'" (*Id.*, p. 9 (quoting Jury Instructions at p. 48).)

    The court agrees with the Government's argument. The uncontroverted evidence at trial established that the maximum fine applicable to Nelms was $500,000, and a sentencing judge would have complete discretion to impose a fine of up to that amount. (Doc. 110, pp. 214, 261.) In addition, by stipulation of the parties, the jurors were told: "A person convicted of the Unlawful Delivery, Manufacture, or Possession with Intent to Deliver or Manufacture a Schedule I Controlled Substance, in violation of 35 P.S. § 780-113(a)(30), may be fined in excess of $5,000, pursuant to 35 P.S. § 780-113(f)(1)." (Doc. 81.) Reviewing the record in the light most favorable to the Government, as is required, the court concludes that any rational trier of fact could have found proof of guilt beyond a

---

[2] The Government refers to the "thing of value" element as the transactional element. These are two different terms describing the same element in the bribery statute at issue.

reasonable doubt on the "thing of value" element based on the available evidence regarding the value of the criminal case.

The fact that there is uncertainty about the amount Nelms would be fined if convicted does not lead the court to conclude that the jury's verdict was based on unreasonable speculation. While there is uncertainty about whether Nelms would have been convicted at all and what fine would have been imposed if he had been convicted, there was concrete evidence presented to the jury regarding the value of the benefit to Barrick and Nelms of having the charge dismissed—namely, the potential fine that Nelms did not have to pay. That is a concrete, specific dollar amount that was presented to the jury to quantify the value of an intangible benefit. This evidence demonstrates that the "thing of value" in this case is substantial rather than trivial. The jury obviously found the evidence sufficient to conclude that the "thing of value" element was satisfied. The court will not substitute its judgment for that of the jury on this point.[3]  *See Delgado*, 984 F.3d at 448; *Brodie*, 403 F.3d at 133.

---

[3] The Government also points to the fact that Nelms had bail set at $100,000 and faced the potential of being required to pay "costs of prosecution" in addition to a fine as facts the jury could have considered when finding Collare guilty on this count. (Doc. 117, pp. 10–11.) In his reply brief, Collare raises several arguments as to why the amount of bail and "costs of prosecution" may not be considered. (Doc. 118.) In light of the determination that the "thing of value" element was satisfied based solely on the amount of the fine, the court will not address these additional arguments.

## CONCLUSION

For the foregoing reasons, Collare's motion for judgment of acquittal is denied.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: January 14, 2022