IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:20-cr-17 |
| | : | |
| v. | : | **(Judge Wilson)** |
| | : | |
| CHRISTOPHER COLLARE, | : | |
| Defendant | : | **Electronically filed** |

### UNITED STATES' SENTENCING MEMORANDUM

Defendant Christopher Collare vowed to serve justice and uphold the law. For at least six years, however, he did the exact opposite, regularly and significantly abusing the power and authority that he wielded as a local and federal law enforcement officer. His illegal conduct ran the gamut—bribery, drug distribution, falsifying official forms, and lying to investigators. Collare's crimes not only stamped a substantial black mark on his work and jeopardized cases in which he was involved, but they also were—and remain—corrosive to the public's already-fragile trust in law enforcement and the criminal justice system.

Collare's conduct appropriately resulted in a guideline range that calls for a substantial term of imprisonment. The range accounts for important facts, such as Collare's public position, his acceptance of more

than one bribe, and his obstruction of justice. The guideline calculation does not, however, capture multiple additional aggravating factors. Those include the longevity of Collare's conduct, which casts an all-consuming shadow over his career; and Collare's exploitation of particularly vulnerable members of the community. Based on those factors, as well as sentences imposed in comparable cases, the Government requests an upward variance and a sentence of at least 60 months.

## I. Collare's criminal conduct persisted for over six years.

The seriousness of Collare's conduct is heightened by its longevity and regularity. Collare's crimes cannot be described as isolated mistakes. Rather, they permeated years of his law enforcement career and almost certainly would have continued had he not been discovered. While the guideline range accounts for Collare's abuse of the public trust, it does not incorporate the persistence of that abuse. The regularity with which Collare abused his authority over many years of his career requires a significant sentence and supports an upward variance.

The beginning of Collare's criminal conduct is unknown to the Government, but the trial evidence shows that his crimes spanned at

least six years. Collare became a member of the Cumberland County Drug Trask Force (CCDTF) in late 2011. Doc. 121 ¶ 6. Within a few months, he provided heroin to Tiffany Newberry, one of his young female confidential informants and a struggling addict. *Id.* ¶ 8. And sometime soon thereafter, he enticed her to perform oral sex on him in exchange for money that she used to purchase heroin. *Id.* ¶ 9. Fast forward to early 2018 and a few months before Collare was first confronted by federal agents: Collare proposed a comparable arrangement to Brielle Johnson. Collare solicited and received oral sex from Johnson in exchange for promising to get her boyfriend a relatively lenient sentence. *Id.* ¶ 15. And of course, in the years between Collare's exploitation of Newberry and Johnson, he engaged in similar conduct with other women: allowing Crystal Meeker to keep heroin she purchased during controlled buys; providing heroin to Ashley Barrick and agreeing to accept sex in exchange for not appearing at her boyfriend's hearing; providing heroin to Amy Keller; and sexually assaulting Romaine Whistler (née Stansfield). *Id.* ¶¶ 10, 12-13, 16-19. The evidence presents a clear picture that, at a minimum, six-plus years of Collare's law enforcement career were infected by his crimes.

The ongoing and extended nature of Collare's illegal conduct enhanced its capacity to damage public trust in law enforcement and the criminal justice system.  This is particularly true since Collare went beyond merely utilizing his public position to achieve his desired ends.  He did not, for example, only develop inappropriate relationships with confidential informants and then lie about them.  He went much further, repeatedly warping and manipulating the criminal justice process.  This fact is most stark in the quid pro quo agreements with Barrick and Johnson, through which he agreed to subvert the criminal justice process in exchange for sex.  But it is also apparent in the numerous law enforcement documents (namely, the CCDTF Form Bs) that Collare doctored in an effort to cover up his conversion of drug evidence for his own purposes.[1]  *E.g.*, Doc. 121 ¶¶ 8, 10, 14.  That type of conduct, as Chief Kenneth Hassinger explained, "opens the door for suspicion and a cloud

---

[1] To be sure, the jury found Collare not guilty of wire fraud.  But given the guilty verdicts on other counts, one can infer that the jury credited the Government's evidence indicating that Collare underreported on numerous occasions drugs purchased during controlled buys.  The false statement convictions, in particular, illustrate that Collare was willing to lie in order to cover up his criminal conduct.  The Court, in any event, may consider for sentencing purposes evidence underlying an acquitted charge.  *United States v. Watts*, 519 U.S. 148, 157 (1997) (per curiam).

of doubt as to the integrity of [an] investigation" and "diminishes the credibility of the Task Force, including the officers involved in it." Doc. 102, at 87, 90.[2] That "cloud of doubt" had a significant real-world impact given the recurring nature of Collare's conduct. The Cumberland County District Attorney's Office dropped over twenty cases in which Collare was involved and had to be prepared to address requests for older cases—going back as far as 2011—to be re-opened. *See* PennLive, "Cases dropped following arrest of former Cumberland County detective: report" (Jan. 27, 2020), https://www.pennlive.com/news/2020/01/cases-dropped-following-arrest-of-former-cumberland-county-detective-report.html. Collare's misconduct was not an isolated blemish, but rather persisted throughout at least six years of his law enforcement career, enhancing its potential harm to society and rendering hollow the platitudes Collare has offered in support of leniency.

## II. Collare exploited vulnerable individuals.

A consistent thread, running throughout the entirety of Collare's conduct, was his exploitation of vulnerable individuals. Those

---

[2] Citations are to the page number listed in the CM/ECF header.

individuals were generally young women who were recovering from drug addiction or still struggling with addiction. They were the products of difficult childhoods, which, for some, included abuse. And they found themselves entangled in the criminal justice system and at the mercy of officers like Collare.

To serve his own desires, Collare used these women and their histories and fed their addiction. The psychological impact of his conduct could be seen first-hand during trial testimony. The Government highlights here some aspects of that testimony as examples of the vulnerabilities Collare exploited and the effects of his actions.

- Johnson's father abused her as a child. Doc. 108, at 62-63. Collare knew this, and while discussing it with her, he rubbed her thigh near her groin and said he missed having "daddy-daughter time with his daughter" and would "like to do that with" her. *Id.* at 63. Collare of course solicited oral sex from Johnson, and his conduct left Johnson feeling powerless and embarrassed. *Id.* at 102.

- Meeker struggled with heroin addiction throughout the time she cooperated with Collare, and ultimately decided that she

- needed to stop cooperating because it was perpetuating her addiction. Doc. 104, at 110-11. Collare, however, made her "feel like [she] had to keep doing it." *Id.* at 111. Additionally, when Meeker expressed hesitation about cooperating against her boyfriend, Collare put his hands on her face and told her she needed to proceed. *Id.* at 115.

- Whistler likely offered the most disturbing testimony, recounting Collare's rape of her in Carlisle's Biddle Mission Park. Doc. 103, at 58-62. Whistler viewed Collare as a father figure and contacted him on that particular day because she was looking for comfort following an altercation with her wife about her wife's desire for a divorce. *Id.* at 30, 59.

These facts are not captured by Collare's guideline range and further weigh in favor of an upward variance.[3] Indeed, Collare's sexual assault of Whistler could justify a sentence far in excess of the guideline range. The Government recognizes that Collare was neither charged

---

[3] Although Collare's crimes involved vulnerable individuals and he (in colloquial terms) victimized them, USSG § 3A1.1's vulnerable-victim enhancement does not apply since (under the guidelines) those individuals are not victims of the offenses of conviction.

7

with nor convicted of sexual assault and has formulated its recommendation accordingly. But Collare's exploitation of Whistler and others nonetheless demands a significant sentence and warrants an upward variance.

### III. Sentences imposed for similar conduct support an upward variance.

Sentences imposed in this Court and others on law enforcement officers who committed crimes similar to Collare's provide additional confirmation that a substantial sentence is needed. Crimes like Collare's not only adversely impact individual cases, but they also engender public doubt about the integrity of law enforcement agencies and the entire criminal justice system. In cases of this type, it is therefore critically important—perhaps more so than in any other case—that the sentence promote respect for the law and deter similar conduct. Recent sentences in comparable cases reflect these objectives.

- Most recently, Judge Mannion sentenced a Scranton police officer to 72 months' imprisonment, varying upward from the guideline range of 30 to 37 months. The defendant had pleaded guilty to violating 18 U.S.C. § 666(a)(1)(B) by

8

accepting sexual favors from four female confidential informants in exchange for taking official acts on their behalf or promising to take official acts. *United States v. McDonald*, No. 3:21-cr-168 (M.D. Pa.).

- Judge Mannion sentenced an Ashley Borough police officer to 180 months' imprisonment after the officer pleaded guilty to a civil rights violation. The officer had sexually assaulted two females in custody. *United States v. Icker*, No. 19-cr-338 (M.D. Pa.).

- A Colorado police officer was sentenced to 72 months' imprisonment after the officer pleaded guilty to a civil rights violation. The officer sexually assaulted a crime victim. *United States v. Arganbright*, No. 19-cr-445 (D. Colo.).

These sentences—which each followed guilty pleas—confirm the significant public interests at stake in cases involving crimes by law enforcement officers. Those interests are heightened here, where the officer has, to date, not expressed acceptance of responsibility or remorse and sought to subvert justice by lying to investigators about even the most straightforward facts. Doc. 121 ¶ 21 (noting that Collare falsely

told agents that Keller had never worked as a confidential informant for him and the CCDTF). Collare, in short, has done nothing to address his betrayal of the public trust and the substantial harm that his conduct has caused. The Court's sentence must do so.

## CONCLUSION

The Court should vary upward and impose a sentence of at least 60 months.

March 4, 2022                              Respectfully submitted,

COREY R. AMUNDSON                JOHN C. GURGANUS
Chief, Public Integrity Section    United States Attorney
U.S. Department of Justice

/s/ James I. Pearce                 /s/ Carlo D. Marchioli
Trial Attorney                      Carlo D. Marchioli
1331 F. Street NW, 3d Floor         Phillip J. Caraballo
Washington, DC 20004                Assistant U.S. Attorneys
Tel: (202) 514-1412                 PA 309217
Fax: (202) 514-3003                 228 Walnut Street, Suite 220
james.pearce@usdoj.gov              P.O. Box 11754
                                    Harrisburg, PA  17108
                                    Tel:  (717) 221-4482
                                    Fax:  (717) 221-4493
                                    carlo.d.marchioli@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on March 4, 2022, I served the foregoing document by electronic service on the following individual:

John A. Abom, Esquire
jaa@abomkutulakis.com

/s/ Carlo D. Marchioli
Carlo D. Marchioli
Assistant U.S. Attorney