IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA         :
                                 :  Case No. 1:20-CR-017
            vs.                  :
                                 :  (Judge Wilson)
CHRISTOPHER COLLARE,             :
                Defendant        :



TRANSCRIPT OF JURY TRIAL PROCEEDINGS

DAY 1
FULL SESSION
PAGES 1 THROUGH 54

BEFORE THE HONORABLE JENNIFER P. WILSON
UNITED STATES DISTRICT COURT JUDGE
JULY 6, 2021; 9:00 A.M.
HARRISBURG, PENNSYLVANIA














Lori A. Shuey
Federal Certified Realtime Reporter
United States Courthouse
228 Walnut Street, P.O. Box 983
Harrisburg, PA  17108-0983
717-215-1270
lori_shuey@pamd.uscourts.gov
Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

1                            APPEARANCES

2

FOR THE GOVERNMENT:

3

     Carlo D. Marchioli, Assistant U.S. Attorney
4    United States Attorney's Office
     228 Walnut Street, Second Floor
5    Harrisburg, PA  17101

6    Phillip J. Caraballo-Garrison, Assistant U.S. Attorney
     United States Attorney's Office
7    235 North Washington Avenue, Suite 311
     Scranton, PA  18503
8
     James I. Pearce, Trial Attorney
9    United States Department of Justice
     Public Integrity Section, Criminal Division
10   1331 F. Street N.W., Third Floor
     Washington, D.C.  20004
11
FOR THE DEFENDANT:
12
     John A. Abom, Esquire
13   Abom & Kutulakis
     2 West High Street
14   Carlisle, PA  17013

15

16

17

18

19

20

21

22

23

24

25

1      *(The following proceedings were held in the courtroom in*
2      *the absence of the jury:)*

3          THE COURT:  Good morning, everyone.  Please be seated.
4      We are now in session for the case of *United States v. Collare*
5      docketed at this court's Number 1:20-CR-17.  There are a few
6      matters I wanted to place on the record before we begin jury
7      selection.

8          The first is to note for the record that I did hold a
9      pretrial conference with counsel that was off the record.  We
10     held that on June 30.  There was only one matter from my notes
11     that I thought it appropriate to place on the record, which was
12     that the defense did request witness sequestration, which
13     request was not opposed by the government, and so all fact
14     witnesses other than the case agents will be sequestered until
15     their testimony is concluded.

16         The other matter that we need to address this morning
17     is to provide the *Brady* notice to Mr. Collare because this is
18     the first opportunity to do so.  And then after I provide the
19     *Brady* notice, I'll give counsel an opportunity, if there's
20     anything that you would like to place on the record before jury
21     selection or any questions that you may have about jury
22     selection, I'll be happy to address those in just a moment.

23         So, Mr. Collare, I note that Federal Rule of Criminal
24     Procedure 5 was amended on October 21st of 2020 to require
25     courts to give both oral and written notice of the government's

1    *Brady* disclosure obligations on the first scheduled court date

2    when both the prosecutor and defense counsel are present.  In

3    this case, the first opportunity for the required oral notice

4    is today, so I am providing that notice to you now.

5          I hereby issue an order confirming that the United

6    States has an obligation to timely disclose *Brady* information

7    to the defendant.  I remind government counsel that failure to

8    comply with these disclosure obligations may result in

9    consequences, such as the exclusion of evidence, dismissal of

10   charges, contempt proceedings, disciplinary referral, and any

11   other relief authorized by law.  I will enter a written order

12   further confirming these obligations.

13         To be clear, this amendment does not alter or expand

14   the government's existing obligations.  It simply requires the

15   court to provide oral and written notice of those obligations

16   to the defendant.  Any questions?

17         *THE DEFENDANT:*  No, Your Honor.

18         *THE COURT:*  All right.  Very well.  Then the only

19   other matter I wanted to address was whether there were any

20   issues arising from the pretrial conference or otherwise that

21   either counsel wish to place on the record.  I'll begin with

22   the government.  Anything on behalf of the government?

23         *MR. MARCHIOLI:*  Not from the pretrial conference, Your

24   Honor, but I did want to alert the court to two things.  First,

25   as the court is probably aware or can at least expect, a number

1    of our witnesses have battled drug addiction throughout their

2    lives, and some are continuing to battle drug addiction.  So

3    we, and primarily the FBI, have arranged for multiple agents

4    beyond the case agents to assist those witnesses in getting to

5    court.

6          And to the extent that our plans kind of don't go

7    according to plan, we hope to have some backup witnesses, but

8    if we do change things or change the witness order that we give

9    to the court at the end of the day or run into any witness

10   difficulties, it might be due to those issues that some of our

11   witnesses are confronting, so we just wanted to inform the

12   court of that at the start of trial.

13         *THE COURT:*  Appreciate it.

14         *MR. MARCHIOLI:*  The second issue, Your Honor, is that

15   the parties have reached multiple stipulations, one of which

16   will cover the admission of a large swath of the government's

17   anticipated exhibits.

18         We'd like to put that particular stipulation on the

19   record prior to our first witness and then move for the

20   admission of the exhibits covered by that stipulation.  And

21   we'd defer to the court about the best time to do that, whether

22   it's when the jury is present or outside of the jury's

23   presence, but we would like to do that before our first

24   witness.

25         *THE COURT:*  All right.  Well, that is wonderful that

1   you've reached that agreement.  I think we -- how have you

2   confirmed the agreement with respect to the exhibit list?  Is

3   it in writing, or would you prefer to simply recite that on the

4   record?

5           *MR. MARCHIOLI:*  It is in writing.  We had planned to

6   also read it on the record, but if Your Honor has a different

7   preference, we can do that, obviously.

8           *THE COURT:*  I'm open to suggestions.  I think as long

9   as -- what I would prefer to do is put on the record the

10  agreement that's been reached outside the hearing of the jury

11  because that can be a bit tedious.  I'd be happy to advise the

12  jury that if they are shown an exhibit and if I indicate it's

13  been admitted, then it is in evidence.  So I can advise them of

14  that without necessarily reading the list to them.

15          So we could do that now, if you'd like.  We could do

16  the stipulation portion, and I can admit the exhibits.  That

17  way, as we discussed during the pretrial conference, when you

18  have a witness on the stand, it's pretty seamless.  You simply

19  remind me -- or you call the number.  I will confirm because I

20  keep track, Ms. Edleblute keeps track, I know you keep track,

21  my law clerk keeps track.

22          If there's any hesitation about whether an exhibit has

23  been admitted, we'll clear that up and it won't be shown to the

24  jury until I've done my confirming step that it's admitted.

25          *MR. MARCHIOLI:*  Okay.

1          *THE COURT:*  So we could do that now.  You have it in

2     writing, so if you want to -- actually, if you want to just

3     tender that, we can mark that as an exhibit to the case, though

4     not an exhibit necessarily to be shown to the jury, unless you

5     want it to be shown to the jury.

6          *MR. MARCHIOLI:*  We don't intend to show it to the

7     jury, Your Honor.  Should I go ahead and read it first or just

8     offer it as an exhibit?

9          *THE COURT:*  Why don't you read it, and then we'll make

10     it an exhibit to the record, and then I will keep track as you

11     read the numbers.

12          *MR. MARCHIOLI:*  Okay.  The following stipulation is

13     entered by the United States and Defendant Christopher Collare

14     through their respective undersigned counsel:

15          It is hereby stipulated and agreed that the exhibits

16     listed below are business records of the respective listed

17     entities.  The records were made at or near the time of the

18     activity they reflect by or from information transmitted by

19     someone with knowledge.

20          The records were kept in the course of the regularly

21     conducted activity of the respective listed entities.  Making

22     the records was a regular practice of that activity.  The chain

23     of custody of the exhibits listed below has been properly

24     maintained.

25          The parties also stipulate and agree to the

1    authenticity of the exhibits listed below.  The parties further

2    stipulate and agree to the admission of the exhibits listed

3    below.

4           This stipulation applies to the following exhibits:

5    Federal Bureau of Investigation records, Government's Exhibits

6    3 through 7.  Cumberland County, Government's Exhibit 8.

7    Borough of Carlisle, Government's Exhibits 9, 50.1, 51.11, 52

8    through 56 --

9           THE COURT:  Slow down one moment, Mr. Marchioli.  I'm

10   sorry, I was with you up until -- I have 50.1, and then what

11   was the next one?

12          MR. MARCHIOLI:  51.11.

13          THE COURT:  Okay.

14          MR. MARCHIOLI:  52 through 56, 57.1, and 58.

15   Cumberland County Drug Task Force, Government's Exhibits 12,

16   20.1 through 22.2, 23.1 and 23.2, 24.1 through 28.2, 29.1 and

17   29.2, 30.1 through 30.2, and 70 through 72.

18          The Law Offices of Paul Orr, Government's Exhibit

19   29.3.  Cumberland County Court of Common Pleas, Government's

20   Exhibits 50.2 through 50.12, 51.1 through 51.10, 51.14 to

21   51.16, 59.1 through 59.5.  Cumberland County District

22   Attorney's Office, Government's Exhibits 50.13, 51.12, and 57.

23          THE COURT:  Did you say 51.3?

24          MR. MARCHIOLI:  It was 50.13.

25          THE COURT:  Okay.  And then, I'm sorry, what was the

1   second?

2         *MR. MARCHIOLI:*  51.12.

3         *THE COURT:*  Okay.

4         *MR. MARCHIOLI:*  And then 57.

5         *THE COURT:*  Thank you.

6         *MR. MARCHIOLI:*  Department of Justice, Office of

7   Inspector General, Government's Exhibit 11.  Pennsylvania State

8   Police, Government's Exhibit 22.3.  Motel 6, Government's

9   Exhibits 80 and 81.  America's Best Value Inn, Government's

10  Exhibit 82.

11        The chain of custody of the following exhibits has

12  been properly maintained.  The parties also stipulate and agree

13  to the authenticity of the following exhibits.  And just as an

14  aside, Your Honor, these exhibits we have not agreed at this

15  point that they will be admitted.

16        *THE COURT:*  Okay.

17        *MR. MARCHIOLI:*  We're just stipulating to authenticity

18  and chain of custody.  And that applies to Government's

19  Exhibits 1, 2, 28.3, 50.14, 51.13, and 150 through 171.

20        And, finally, the parties further stipulate and agree

21  to the admission of the following exhibits:  1, 28.3, 50.14,

22  51.13, 150 to 160, and 161 to 171.

23        *THE COURT:*  I'm sorry, what was that last range?

24        *MR. MARCHIOLI:*  161 to 171.

25        *THE COURT:*  Thank you.  All right.  Is that --

1          *MR. MARCHIOLI:*  That's everything from the government,

2    Your Honor.

3          *THE COURT:*  All right.  And so I assume Mr. Abom

4    already has a copy of the stipulation?

5          *MR. MARCHIOLI:*  We need to make a copy of the signed

6    version, Your Honor.

7          *THE COURT:*  Okay.  Ms. Edleblute, would you mind, or

8    Mr. Thomas, could one of you, after it's marked with an exhibit

9    sticker, you'll retain the original, and then we can make a

10   couple of copies, maybe three.

11         *MR. MARCHIOLI:*  Should I provide a copy?

12         *THE COURT:*  Yeah, we'll go and make some copies so

13   that we all have the same and then the original will remain for

14   docketing with Ms. Edleblute.  We'll make that Government

15   Exhibit -- why don't we make it Government Exhibit 300.  I will

16   admit the stipulation with respect to exhibits as Government

17   Exhibit 300.  We will make that part of the record of this

18   trial.

19         I will now admit into evidence, pursuant to the

20   parties' stipulation, the exhibits indicated by Mr. Marchioli

21   and as agreed to by counsel only with -- and the court is

22   mindful of the fact that there was a small set of exhibits that

23   there was a stipulation to authenticity and chain of custody,

24   but not admissibility, and so I have not reflected that in my

25   record as those exhibits being admitted but merely that they

1   are subject to a stipulation.

2          And so as I indicated earlier, when the jury is

3   empaneled and these exhibits become -- are being discussed, you

4   can simply indicate, Your Honor, I would ask to show the

5   witness Exhibit Number 1 which was previously admitted into

6   evidence, may it be displayed, I'll confirm from my notes that

7   it's admitted, and then it will be displayed.

8          All right.  Are there any other stipulations?  I know

9   there was some discussion of potential fact stipulations.

10          *MR. MARCHIOLI:*  There are two additional stipulations,

11   Your Honor.  With respect to those, we would propose to read

12   those during the trial.

13          So, for instance, a stipulation about a heroin

14   analysis and a stipulation related to the federal program

15   bribery charge and specifically that the two municipalities at

16   issue received over $10,000 under a federal program and a

17   stipulation related to a fine applicable to one of the drug

18   offenses that's listed in the indictment.

19          *THE COURT:*  Okay.

20          *MR. MARCHIOLI:*  We would propose to read those at an

21   appropriate point during the trial.

22          *THE COURT:*  All right.  Very well.  Thank you.  Are

23   there any other preliminary matters for the government?

24          *MR. MARCHIOLI:*  No, Your Honor.

25          *THE COURT:*  For the defense?

1              MR. ABOM:  No, Your Honor.

2              THE COURT:  All right.  Well, then what we'll do is,

3      Ms. Edleblute, when she finishes taking care of that document,

4      we'll check in with our jury clerk and check on the status of

5      things.  I'll be available.

6              So as soon as we get the word that the chart, jury

7      list, and questionnaires are available, Ms. Edleblute will get

8      those distributed to you, and then we'll keep you posted on the

9      status of when we can bring the jury into the room.

10             Hopefully it will be close to 9:30, but we do have a

11     significant number of jurors for Ms. Campbell to process in.

12     So we'll keep you posted, and I'll be available.  Court will

13     stand in recess.

14          (Recess taken.)

15          (Prospective jurors enter courtroom at 10:41 a.m.)

16             THE COURT:  Good morning, everyone.  Please be seated.

17     I am Judge Jennifer Wilson, and I am the trial judge for the

18     case you've been called in for this morning.  You have been

19     called today as prospective jurors for the case of *United*

20     *States v. Christopher Collare*.  This is a criminal case.

21             Seated in front of me are members of my staff.  To my

22     left is our court reporter who will be making a record of

23     everything said in the courtroom, which is called a transcript.

24     Seated next to the court reporter is my courtroom deputy for

25     this case, whom you've already met.  Her name is Victoria

1   Edleblute.  And then to my right is my law clerk, Liam Thomas,

2   who will be assisting me during this trial.

3          I join everyone in this room in thanking you for your

4   service as jurors already today.  I understand you've already

5   watched a video called, *Called to Serve*, which explains the

6   importance of jury selection and the importance of your

7   service, and I promise you I will do my best not to repeat the

8   points already made in that video as we move ahead with the

9   selection of jurors who will decide this case.

10         In a few moments, I will begin asking you questions to

11  assess your qualifications to sit as jurors for this particular

12  case.  You are about to take an oath to answer my questions

13  truthfully.  This process throughout this morning is called

14  voir dire.  So I'll now ask all prospective jurors to please

15  stand so that Ms. Edleblute can administer an oath.

16         *COURTROOM DEPUTY:*  Please raise your right hand.

17      *(Prospective jurors sworn.)*

18         *COURTROOM DEPUTY:*  Thank you.

19         *THE COURT:*  Thank you.  Please be seated.  The voir

20  dire examination will begin with a brief statement about the

21  particulars of the case.  The purpose of providing this

22  statement is to tell you about the case generally and to

23  identify the parties and their lawyers.

24         Questions will then be asked to find out whether you

25  have any personal knowledge of or interest in this case, as

1   well as to determine whether there is any reason why you are

2   not able to render a fair and impartial verdict.  Please accept

3   this questioning process in the spirit of its objective, which

4   is to select a fair and impartial jury.

5          Now, before you came into court this morning, you were

6   asked to fill out a questionnaire in an effort to streamline

7   the jury selection process.  The attorneys and I each have a

8   copy of your completed questionnaires, and we will refer to

9   those instead of making you repeat all of the answers.

10         In addition, you have each been assigned a juror

11  number in an effort to protect your privacy.  I will refer to

12  you by your juror number throughout this selection process, and

13  I will also ask you, if you have an answer to a question, to

14  identify yourself by your juror number.

15         If you have a response to a question that I ask or

16  that one of the attorneys asks, you will let me know that you

17  have a response by raising your hand.  When it's your turn to

18  respond, please stand, state your juror number, and then

19  provide your answer.

20         I know that some folks are more soft-spoken than

21  others, so if you have any difficulty projecting your voice so

22  that we can all hear you and so that we can capture your answer

23  for the record, we do have a microphone we can hand out, but it

24  may be easier if you just, at least initially, attempt to keep

25  your voice up.

1          In addition, some of you are masked, which is

2   perfectly fine.  That's at your discretion according to the

3   masking policy in our courthouse.  I just ask, it may be

4   easier, if you have a response, to lower your mask, at least

5   for the purpose of answering a question.  All right?

6          And to that end, there is signage throughout the

7   courthouse, we're following the CDC policy.  I won't be asking

8   any of you if you're vaccinated.  The signage speaks for

9   itself.  If you are vaccinated, you're not obligated to wear a

10  mask, though you're free to do so.  If you're not vaccinated,

11  per the CDC, we ask that you continue to be masked.

12          Now, if I ask a question that you would prefer not to

13  answer in the hearing of everyone else in the courtroom,

14  meaning the other prospective jurors, you should ask to speak

15  to me up front.  This is called a sidebar conference.  The

16  attorneys will be able to listen, and it will be on the record,

17  but I can offer you this option if you'd like a little more

18  privacy for your response.

19          Anytime there is a sidebar conference, we will turn on

20  white noise, and we use a special set of headphones up front so

21  that those of us who are intended to hear can hear.  I do this

22  so that I can have a private conversation up here at the bench.

23  It is intended, just to be clear, that all of you who are

24  prospective jurors will not hear this conversation.  If you are

25  able to hear, I would just ask if you could let me know that by

1    raising your hand so that we can make adjustments to the sound,

2    if needed.

3         If you do come forward for a sidebar conference, we

4    will provide you with a special set of headphones that plugs

5    into the system, and I would just ask if you can keep those

6    throughout jury selection.  You can dispose of them at the end.

7    But that way we can just give each person who needs one one set

8    of headphones.

9         Now, after I conclude the questioning, I will ask all

10   prospective jurors to remain seated while I confer with counsel

11   up here at the bench for what's called a sidebar conference, as

12   you already know.

13        After I finish conferring with counsel about which

14   prospective jurors should be removed for cause and after

15   counsel has an opportunity to exercise their peremptory

16   challenges, I will then identify the jurors who will be

17   empaneled for this case.

18        This process will take some time, but we'll move as

19   quickly as possible.  I simply ask for your patience, your

20   attention, and your honesty, as this is a matter of great

21   importance to the parties and their counsel, as well as to this

22   court.  Now I'll turn to the questioning.

23        *(Whereupon, voir dire was conducted, and a jury of twelve*

24   *and two alternates was empaneled.)*

25             THE COURT:  Mr. Marchioli, are you satisfied with the

1   jury?

2           *MR. MARCHIOLI:*  Yes, Your Honor.

3           *THE COURT:*  Mr. Abom, are you satisfied with the jury?

4           *MR. ABOM:*  Yes, Your Honor.

5           *THE COURT:*  All right.  Thank you, gentlemen.  Remain

6   standing.  Ms. Edleblute will now administer an oath.

7           *COURTROOM DEPUTY:*  Please raise your right hand.

8      *(Jury sworn.)*

9           *COURTROOM DEPUTY:*  Thank you.

10          *THE COURT:*  All right.  Empaneled jurors, please be

11  seated.  We are going to let you go to lunch, and I want to

12  just sort of explain how we're going to process out of the

13  courtroom at this time.

14          So, first of all, all of you who have not now been

15  empaneled and taken an oath, you are being excused with our

16  tremendous appreciation.  I know it's been a long morning.  I

17  appreciate everyone's patience and candor.  You've been an

18  extraordinarily interactive group and I think just a really

19  great selection process, although I know a long one, and you're

20  probably all hungry and eager to get out of this room.

21          So I won't belabor the point, but please know that

22  even though -- for those of you who have not been empaneled,

23  you're not being selected to serve as jurors, but your service

24  is, nonetheless, valuable.  It takes a room full of 60 people,

25  as you can now appreciate, to empanel a jury of 14, and we

1    really appreciate your time, and I think I speak on behalf of

2    the lawyers and the parties in saying that.  So your service is

3    greatly appreciated.

4            The way we will move forward at this juncture is that

5    Ms. Edleblute, in just a moment, will open the doors and invite

6    all of you to process out of the courtroom.  Those of you who

7    have been excused, you are free to go.  Do they need to go to

8    the seventh floor to check in with Marlene?

9            *COURTROOM DEPUTY:*  Not unless there's something that

10   they need from her.

11           *THE COURT:*  Okay.  If you have no reason to speak with

12   Ms. Campbell, the jury clerk, you're free to just directly

13   leave.  You don't need to return to the seventh floor.

14           For the 14 of you who are now empaneled jurors, I'm

15   going to excuse you for lunch, but before you leave,

16   Ms. Edleblute is going to show you to your new home for the

17   next couple weeks, your jury deliberation room.  So she's going

18   to escort you back to the jury deliberation room so you know

19   where it is, and then you're excused for lunch.

20           We will begin the trial at 3 o'clock.  So you're free

21   to go get a bite to eat and then come back to the jury

22   deliberation room.  I would ask that you be back to the jury

23   deliberation room by no later than 2:45 so that we can start on

24   time at 3 o'clock.

25           All right.  Thank you, everyone, and I will see those

1  of you who are returning at 3 o'clock.  Court stands in recess.

2  *COURTROOM DEPUTY:*  Please rise.

3  *(Luncheon recess taken.)*

4  *(The following proceedings were held in the courtroom in*

5  *the absence of the jury:)*

6  *THE COURT:*  Just a couple of things.  Number one,

7  regarding the afternoon schedule, so the plan is, I'm bringing

8  the jury in at 3 o'clock, and I anticipate my preliminary

9  instructions to take somewhere between 25 to 30 minutes, and

10  then we would go right into opening statements.

11  Mr. Abom, do you plan to give an opening statement

12  this afternoon, or are you reserving?

13  *MR. ABOM:*  I plan to give an opening statement.

14  *THE COURT:*  Okay.  And I had allocated 45 minutes per

15  side.  Do you both anticipate using about that amount of time

16  or --

17  *MR. MARCHIOLI:*  I do not, Your Honor.  I think it

18  shouldn't be longer than 25 minutes.

19  *MR. ABOM:*  And I do not, as well.

20  *THE COURT:*  Okay.  So then I think where that will put

21  us, depending on -- and I'll keep track of time just in case.

22  It doesn't sound like we'll need the full amount of time.  If

23  you get close to 45 minutes, do either of you want a warning,

24  or will your respective bench keep track of that for you?

25  *MR. MARCHIOLI:*  I'll take a warning, but hopefully I

1    don't get there.

2         MR. ABOM:  Yeah, I don't think it's going to be 45

3    minutes, but if I get to 40 minutes, if you could --

4         THE COURT:  Tori will get your attention in some way,

5    shape, or form.

6         MR. ABOM:  Yes.

7         THE COURT:  Okay.  I think where that's going to put

8    us then, until we conclude opening statements, will be a

9    natural break for the day.

10        I did sort of take a look at where our jurors are

11   traveling from, our empaneled jurors.  We have some that are

12   traveling a fair distance, so I think we should anticipate

13   sticking to the "no earlier than 9:00" and, if we can avoid it,

14   "no later than 4:30" schedule to be considerate of their travel

15   time.

16        One other matter related to our jurors, Juror Number

17   26, who is now empaneled, let Ms. Edleblute know, and I'm

18   letting you know, he is a pilot.  He will be able to serve, you

19   know, Monday through Friday, but he, for example, has a flight

20   scheduled this weekend that will take him out of state.

21        He anticipates being back, if the flights remain as

22   scheduled, Sunday evening.  But he did let us know that there

23   is always that possibility of a canceled flight.  So he's not

24   asking to be excused, he intends to serve, but that is a

25   possibility.  And, of course, that is why we have alternates.

1   So letting you know that.

2         Also related to our jury, because we went sort of long

3   on jury selection, through no one's fault -- I thought we

4   actually moved at a pretty good pace -- my desire to be humane

5   and get them out of here to be able to get lunch resulted in --

6   I failed to give them any instruction about not looking at

7   media and not discussing the case.

8         And I do want to note for the record that the court

9   observed, over the lunch break, there's an article on PennLive

10  about jury selection.  The jurors have their phones.  I just

11  wanted to put that on the record.  It was my failure to

12  instruct.  Normally before we take a recess, I would have

13  instructed them not to discuss the case with anyone and not to

14  review any articles or gather any information about the case.

15        Is there any discussion about that?  Is there anything

16  either side would like to place on the record?

17        *MR. MARCHIOLI:*  Not for the government, Your Honor.

18        *MR. ABOM:*  I don't know if you would want to -- I

19  leave it to the court to inquire as to whether anybody looked

20  at any articles.  Of course then everybody is going to be very

21  curious and will go to do that.

22        Maybe you could instruct them not to, but if they had,

23  to let you know about it.  Or if there was -- I don't know what

24  it said, so I don't know if there's anything in there.

25        *THE COURT:*  It was just an article about jury

1   selection.  And it does detail the nature of the charges, as

2   well.  I mean, it's a fairly comprehensive article, actually,

3   describing the case, the nature of the charges, and the jury

4   selection process.

5           What I would suggest is, so there's no discussion

6   of -- I don't think in the standard pattern jury instructions

7   for preliminary matters, I don't think there's any discussion

8   of, you know, not doing any research, but certainly before we

9   break for today I'll give them the full instruction on no

10  discussions, no consumption of news, et cetera, no research.

11          And what I will do is, I will flag for them that if

12  they have already been exposed to any information about the

13  case, they should let Ms. Edleblute know, and she'll let me

14  know.  And then I'll pick up with that in the morning, as well,

15  as a fail-safe.  Do you feel that would adequately address the

16  issue, Mr. Abom?

17          *MR. ABOM:*  I do, Your Honor.

18          *THE COURT:*  Lastly, we had live-streamed jury

19  selection to Courtroom 4.  That was -- that is turned off at

20  this point.  It remains available as an option if necessary, if

21  we had any difficulty during the trial with seating or if

22  anyone was not appropriate to be in the courtroom, but at this

23  point I'm not planning to live-stream unless that becomes

24  necessary.

25          Finally, when we conclude today, after I excuse the

```
 1    jury -- and I'll tell them the plan will be to resume trial at
 2    9:00 a.m. on Wednesday.  I'll tell them to be here no later
 3    than 8:45.  But after I excuse them, I'll ask the government
 4    just to give us a lineup for tomorrow's witness list.  All
 5    right?  So we'll do that before we part ways.
 6            Are there any other preliminary matters for the
 7    government before we bring the jury in?
 8            MR. MARCHIOLI:  No, Your Honor.
 9            THE COURT:  For the defense?
10            MR. ABOM:  No, Your Honor.
11            THE COURT:  All right.  Very well.  So we'll just wait
12    until 3 o'clock.
13            MR. MARCHIOLI:  Your Honor, I apologize, there is one
14    issue we just learned, and we actually don't have complete
15    information about it.
16            One of the government's witnesses, FBI Special Agent
17    Eric Rardain, mentioned to us just very briefly as we were
18    coming up to court that he saw someone who he thinks is one of
19    the jurors who he recognizes, I think through some type of
20    youth sports connection.
21            He doesn't think that that juror even knows his last
22    name, which might be why no one raised their hand to indicate
23    that they know Eric Rardain.  We can try to get more
24    information.  That's all I have at this point.  I just wanted
25    to let the court know and let Mr. Abom know.
```

1          THE COURT:  All right.  Thank you.  Mr. Abom.

2          MR. ABOM:  Well, if -- I'm hopeful that they don't

3     know each other.  You know, it's --

4          THE COURT:  I'm sorry, what is the agent's name?

5          MR. MARCHIOLI:  Eric Rardain.

6          THE COURT:  Was that on the list?  It was such a long

7     list.  Was it on the list?

8          MR. MARCHIOLI:  It was, Your Honor.

9          THE COURT:  Okay.

10         MR. MARCHIOLI:  The spelling is a little bit strange,

11    but -- so you might have said, like, Eric Rardain or something

12    like that.

13         THE COURT:  Okay.  Well, I think we need to clear that

14    up.  What I could do is, before we bring the jury in, I could

15    ask Ms. Edleblute to let them know that I mispronounced a name.

16    Were there any other names I mispronounced?

17         MR. MARCHIOLI:  I don't believe so.  I think you were

18    fairly close to what I understand the correct pronunciation to

19    be.

20         THE COURT:  Okay.  We could simply ask Ms. Edleblute

21    to let the jurors know that the court inadvertently

22    mispronounced one of the witness names and the judge wanted to

23    know if, with the correct pronunciation, if any of you know

24    this person.  That might be a way to -- because as you say, the

25    juror may not actually connect a name and a face or may not

1    know the last name.

2            *MR. MARCHIOLI:*  Right.

3            *THE COURT:*  I think that would be appropriate.  So

4    what is the correct pronunciation?

5            *MR. MARCHIOLI:*  Eric Rardain.

6            *THE COURT:*  All right.  She'll ask that question, and

7    then, Tori, if that creates an issue, if you could just come

8    back in and then let us know before we bring them in.

9            *COURTROOM DEPUTY:*  Yes, of course.

10           *THE COURT:*  Thank you.

11           *MR. MARCHIOLI:*  Your Honor, I believe there's another

12   issue related to my opening statement.

13           *THE COURT:*  Okay.

14           *MR. MARCHIOLI:*  I plan to show a few pictures during

15   the opening statement which I believe have now been admitted

16   based on the stipulation this morning.  I also plan to show a

17   particular text message that Mr. Abom has not concurred in its

18   admission yet, but the government anticipates it will be

19   admitted during the trial.

20           *MR. ABOM:*  And I would object to it being shown to the

21   jury at the opening statement.

22           *THE COURT:*  Just the text message?

23           *MR. ABOM:*  Correct.

24           *THE COURT:*  Okay.  Mr. Marchioli, I'm going to caution

25   you in the same way that I have prior counsel in other cases

1    when this issue has come up, if you take the risk, so if you

2    show the jury an exhibit that is ultimately not admitted,

3    that's a litigation hazard you're assuming.

4            But if you -- I mean, the purpose of an opening

5    statement is to provide a roadmap for the jury of what you

6    anticipate the evidence will show, so I'm not going to preclude

7    you from doing that, but I will give you that caution, that if

8    it's ultimately not admitted, I suspect the jury will hear from

9    Mr. Abom about that.

10           *MR. MARCHIOLI:*  Understood, Your Honor.

11           *MR. ABOM:*  If the court would look at the nature of

12   the email, that's a bell that can't be unrung.  Because if it

13   doesn't come in -- it's so prejudicial that I don't think that

14   it would -- that prejudice would be able to be overcome if it

15   didn't come in.

16           *THE COURT:*  Would you like me to look at the exhibit?

17           *MR. ABOM:*  I would.

18           *THE COURT:*  Okay.  Ms. Seto, do you have that

19   available?  How would you propose to admit the exhibit?  I

20   mean, it's clearly hearsay.

21           *MR. MARCHIOLI:*  Your Honor, this is a statement of the

22   defendant, and we anticipate that the individual that the

23   defendant sent this text message to will testify.  Her name is

24   Amy Keller.  She will be able to provide significant

25   information about getting multiple texts from the defendant's

1    phone.

2         Additionally, Your Honor, the defendant was asked

3    during his recorded interview about this particular text

4    message, and I believe at least five lines or so of the text

5    message were read to the defendant during the interview, and he

6    indicated, I think without any doubt, that, yes, he had sent

7    that text message.

8         *THE COURT:*  Mr. Abom.

9         *MR. ABOM:*  Your Honor, I just think it's very

10   inflammatory.  And while I -- and we haven't conceded that it

11   would be admitted into the record as of yet and it hasn't been

12   admitted, so it's not part of our stipulations, and we had many

13   stipulations.  And that witness has not yet testified, and the

14   witnesses regarding any showing of anything, they have not yet

15   testified, either.

16        So I would -- I think it can be a roadmap, but

17   ultimately they're giving the evidence.  It's no different than

18   displaying the evidence before it's been admitted, and the

19   court has admonished us not to do that.

20        *MR. MARCHIOLI:*  I don't believe the court has

21   admonished us not to do that.  I think we're permitted to use

22   certain exhibits during opening statements.  The government

23   certainly understands that there are risks associated with

24   doing that.

25        I think I should have stated initially my second

1　point, which is that the defendant was read a portion of this

2　text message during his recorded interview and acknowledged

3　sending that text message.  That should be enough to get it in.

4　And like I said, we're also going to have, we plan to have the

5　witness who received this text message also testify.

6　　　　THE COURT:  I'm going to stand by my original

7　position, so he's permitted to show it.

8　　　　All right.  Are there any other preliminary issues?  I

9　think Ms. Edleblute was proceeding as we had discussed, but

10　we'll soon be prepared to bring the jury in.  Counsel, are you

11　both ready?

12　　　　MR. MARCHIOLI:  Yes, Your Honor.

13　　　(Court and courtroom deputy confer.)

14　　　　THE COURT:  Counsel, as requested, Ms. Edleblute did

15　run the name of the officer past the jurors just indicating

16　he's a witness.  She gave it the correct pronunciation, and

17　there was no concern expressed by our jurors.  Everyone ready?

18　　　　MR. MARCHIOLI:  Yes, Your Honor.

19　　　　THE COURT:  All right.  We'll bring the jury in.

20　　　(Jury enters courtroom.)

21　　　　THE COURT:  Welcome, jurors.  Please be seated,

22　everyone.  Ladies and gentlemen, now that you have been sworn,

23　I'm going to tell you what your role as jurors in this case

24　will be.

25　　　　Under our system of justice, the role of the jury is

1    to find the facts of the case based on the evidence presented
2    at trial.  You must decide the facts only from the evidence
3    presented to you in this trial.
4          From the evidence that you will hear and see in this
5    room, you will decide what the facts are and then apply to
6    those facts the law that I will give you in my final
7    instructions.  That is how you will reach your verdict.
8          Whatever your verdict, it will have to be unanimous.
9    All of you will have to agree on it or there will be no
10   verdict.  In the jury room, you will discuss the case among
11   yourselves, but ultimately each of you will have to make up his
12   or her own mind.  Therefore, each of you has a responsibility
13   which you cannot avoid, and you should do your best throughout
14   the trial to fulfill this responsibility.
15         I play no part in finding the facts.  You should not
16   take anything I may say or do during the trial as indicating
17   what I think of the evidence or about what your verdict should
18   be.  My role is to make whatever legal decisions have to be
19   made during the course of the trial and explain to you the
20   legal principles that must guide you in your decisions.
21         You must apply my instructions about the law.  Each of
22   the instructions is important.  You must not substitute your
23   own notion or opinion about what the law is or ought to be.
24   You must follow what I give to you whether you agree with it or
25   not.

1          Perform these duties fairly and impartially.  Do not

2     allow sympathy, prejudice, fear, or public opinion to influence

3     you.  You should also not be influenced by any person's race,

4     color, religion, national ancestry, gender, or position in life

5     or in the community.

6          Here are some important rules about your conduct as

7     jurors:

8          First, keep an open mind.  Do not make up your mind

9     about your verdict until you have heard all of the evidence and

10    I have given final instructions about the law at the end of the

11    trial and you have discussed the case with your fellow jurors

12    during your deliberations.

13         Second, do not discuss the case among yourselves until

14    the end of the trial when you retire to the jury room to

15    deliberate.  You need to allow each juror the opportunity to

16    keep an open mind throughout the entire trial.  During trial,

17    you may talk with your fellow jurors about anything else of a

18    personal nature or of common interest.

19         Third, during the trial, you should not speak to any

20    of the parties, lawyers, or witnesses involved in this case,

21    not even to pass the time of day.  If any lawyer, party, or

22    witness does not speak to you if you pass in the hallway, ride

23    in the elevator, or the like, remember, it's because they're

24    not supposed to talk or visit with you either.

25         Do not talk with or -- do not talk with anyone else or

1    listen to others talk about this case until the trial has ended

2    and you have been discharged as jurors.  It is important not

3    only that you do justice in this case, but that you give the

4    appearance of justice, as well.

5            If anyone should try to talk to you during -- talk to

6    you about the case during the trial, please report that to me

7    through my courtroom deputy immediately.  Do not discuss the

8    situation with any other juror.

9            Fifth, do not discuss this case with anyone outside

10   the courtroom or at home, including your family and friends.

11   You may certainly tell your family or friends that you have

12   been selected as a juror in a case, and you may tell them how

13   long the trial is expected to last.

14           However, you should also tell them that the judge

15   instructed you not to talk any more about the case and that

16   they should not talk to you about it.  The reason for that is

17   that sometimes someone else's thoughts can influence you.  Your

18   thinking should be influenced only by what you learn in this

19   courtroom.

20           Sixth, until the trial is over and your verdict is

21   announced, do not watch or listen to any television or radio

22   news programs or reports about the case or read any news or

23   Internet stories or articles about the case or about anyone

24   involved with the case.

25           I'll check with you each afternoon.  I'll remind you

1    of this instruction.  I'll check with you in the morning.  And

2    if at any time, including now, if anyone has read or heard

3    anything about the case, I'll ask you to please let

4    Ms. Edleblute know at the next recess.

5            Seventh, do not use a computer, cellphone, other

6    electronic device, or tools of technology while in the

7    courtroom or during deliberations.  These devices may be used

8    during breaks or recesses for personal uses but may not be used

9    to obtain or disclose information about the case.

10           You may not communicate with anyone about the case on

11   your cellphone, through email, Blackberry, iPhone, text

12   messaging, or on Twitter, through any blog or website, through

13   any Internet chat room or by way of any other social networking

14   websites, including Google Plus, Facebook, MySpace, LinkedIn,

15   and YouTube.  You may not use any similar technology of social

16   media, even if I have not specifically mentioned it.

17           Eighth, do not do any research or make any

18   investigation on your own about any matters relating to this

19   case or this type of case.  This means, for example, that you

20   must not visit the scene, conduct experiments, consult

21   reference works or dictionaries, or search the Internet,

22   websites, or blogs for additional information or use a

23   computer, cellular phone, or other electronic devices or tools

24   of technology or any other method to obtain information about

25   this case, this type of case, the parties in this case, or

1   anyone else involved in this case.

2          Please do not try to find out information from any

3   source outside the confines of this courtroom.  You must decide

4   this case based only on the evidence presented in the courtroom

5   and my instructions about the law.  It would be improper for

6   you to try to supplement that information on your own.

7          Finally, you should not concern yourselves with or

8   consider the possible punishment that might be imposed if you

9   return a verdict of guilty.

10          Now, during the trial, it may be necessary for me to

11   talk with the lawyers out of your hearing.  As you already

12   know, that is referred to as a bench or sidebar conference.  If

13   that happens, please be patient.

14          We also ask that you advise me through my courtroom

15   deputy if you are able to hear any of the sidebar conferences

16   because the purpose, as you already know, is to hold these

17   discussions outside of your hearing for important reasons.

18          I know you may be curious about what we're discussing.

19   We are not trying to keep important information from you,

20   rather these conferences are necessary for me to discuss with

21   the lawyers objections to evidence and to be sure that evidence

22   is presented to you correctly under the rules of evidence.

23          We will, of course, do what we can to keep the number

24   and length of these conferences to a minimum.  If I think the

25   conference will go long, I will take a recess.

1          I may not always grant a lawyer's request for a

2     sidebar conference.  Do not consider my granting or denying a

3     request for a conference as suggesting my opinion of the case

4     or what your verdict should be.

5          At the end of the trial, you must make your decision

6     based on what you remember of the evidence.  You will not have

7     a written transcript of the testimony to review.  You must pay

8     close attention to the testimony as it is given.

9          If you wish, you may take notes to help you remember

10    what witnesses said.  My courtroom deputy has arranged for

11    pens, pencils, and you have notebooks in the binders that have

12    been provided for you.  If you do take notes, please keep them

13    to yourself until the end of the trial when you and your fellow

14    jurors go to the jury room to decide the case.

15         Here are some specific points to keep in mind about

16    note-taking:

17         Note-taking is permitted, but it is not required.  You

18    are not required to take notes.  How many notes you may want to

19    take, if any, is entirely up to you.  Be brief with your notes.

20    Please make sure the note-taking does not distract you from

21    your tasks as jurors.  You must listen to the testimony of each

22    witness.

23         You also need to decide whether and how much to

24    believe each witness.  That will require you to watch the

25    appearance, behavior, and manner of each witness while he or

1   she is testifying.  You cannot write down everything that is

2   said, and there is always a fear that a juror will focus so

3   much on note-taking that he or she will miss the opportunity to

4   make important observations.

5           Your notes are memory aids.  They are not themselves

6   evidence.  Notes are not a record or written transcript of the

7   trial.  Whether or not you take notes you will need to rely on

8   your own memory of what was said.  Notes are only to assist

9   your memory.  You should not be overly influenced by notes.

10          Do not use your notes or any other juror's notes as

11  authority to persuade fellow jurors.  In your deliberations, do

12  not give any more or less weight to the views of a fellow juror

13  just because that juror did or did not take notes.

14          Do not assume that just because something is in

15  someone's notes, that it necessarily took place in court.  It

16  is just as easy to write something down incorrectly as it is to

17  hear or remember it incorrectly.

18          Notes are not entitled to any greater weight than each

19  juror's independent memory of the evidence.  You should rely on

20  your individual and collective memories when you deliberate and

21  reach your verdict.

22          Do not take your notes away from court.  I repeat, at

23  the end of each day, please leave your notes in each of your

24  binders in the jury room.  Do not take them with you.  You will

25  leave your notes in the jury room during the lunch break and at

the conclusion of each day of trial.  Ms. Edleblute will
collect your notes and place them in a locked room at the end
of each day.  My staff is responsible for making sure that no
one looks at your notes.

Immediately after you have finished your deliberations
and I have accepted your verdict, my staff will collect and
destroy your notes to protect the secrecy of your
deliberations.

Only the lawyers and I are allowed to ask questions of
witnesses.  You are not permitted to ask questions of
witnesses.  If, however, you are unable to hear a witness or a
lawyer, please raise your hand immediately and I will correct
the situation.

Now, the trial will proceed in the following manner:
First, very shortly from now the lawyers will have an
opportunity to make opening statements to you.  The prosecutor
may make an opening statement at the beginning of the case.

The defendant's lawyer may make an opening statement
after the prosecutor's opening statement or the defendant may
postpone the making of an opening statement until after the
government finishes presenting its evidence.  The defendant is
not required to make an opening statement.

The opening statements are simply an outline to help
you understand what each party expects the evidence to show.
What is said in the opening statements is not itself evidence.

1         Second, after opening statements, the government will

2    introduce the evidence that it thinks proves the charges stated

3    in the indictment.  The government will present witnesses, and

4    the defendant's lawyer may cross-examine those witnesses.  The

5    government may also offer documents and other exhibits into

6    evidence.

7         Third, after the government has presented its

8    evidence, the defendant may present evidence, but he is not

9    required to do so.  As I will tell you many times during this

10   trial, the government always has the burden or obligation to

11   prove each and every element of the offenses charged beyond a

12   reasonable doubt.

13        The defendant is presumed to be innocent of the

14   charges.  The law never imposes on a defendant in a criminal

15   case the burden of proving his innocence by calling any

16   witnesses, producing any exhibits, or introducing any evidence.

17        Fourth, after all of the evidence has been presented,

18   the lawyers will have the opportunity to present closing

19   arguments.  Closing arguments are designed to present to you

20   the parties' theories about what the evidence has shown and

21   what conclusions may be drawn from the evidence.  What is said

22   in closing arguments is not evidence, just as what is said in

23   the opening statements is not evidence.

24        Fifth, after you have heard the closing arguments, I

25   will give you orally and in writing the final instructions

1  concerning the law that you must apply to the evidence

2  presented during the trial.  As I am doing now, I may also give

3  you instructions on certain aspects of the law throughout the

4  trial, as well as at the end of the trial.

5  Sixth, after my final instructions on the law, you

6  will retire to consider your verdict.  Your deliberations are

7  secret.  You will not be required to explain your verdict to

8  anyone.  Your verdict must be unanimous.  All twelve of

9  you must -- all twelve who deliberate must agree to the

10  verdict.

11  You must keep your minds open during this trial.  Do

12  not make up your mind about any of the questions in this case

13  until you have heard each piece of evidence and all of the law

14  that you must apply to the evidence, in other words, until you

15  begin your deliberations.

16  The trial is expected to last approximately three

17  weeks.  However, this is simply a prediction and not a

18  guarantee.  Each day the court will begin trial at 9:00 a.m.,

19  and we will take a morning break, a lunch break, and an

20  afternoon break with the goal of recessing each day at

21  4:30 p.m.  The court may adjust this schedule as needed to

22  accommodate the court, the parties, and the witnesses.

23  You are permitted to use your cellphones during

24  breaks, but you may not bring your phones into the courtroom.

25  You must make your decision in this case based only on

1   the evidence that you see and hear in the courtroom.  Do not

2   let rumors, suspicions, or anything else that you may see or

3   hear outside of court influence your decision in any way.

4          The evidence from which you are to find the facts

5   consists of the following:  The testimony of the witnesses,

6   documents, and other things received as exhibits, and any fact

7   or testimony that is stipulated, which simply means formally

8   agreed to by the parties.

9          The following are not evidence:  Statements and

10  arguments of the lawyers for the parties in the case, questions

11  by the lawyers and questions that I might ask.  You must not

12  assume that a fact is true just because one of the lawyers or I

13  ask a question about it.  It is the witness's answers that are

14  the evidence.

15         Of course, you may need to consider the question to

16  know what a witness means by his or her answer.  For example,

17  if a witness answers "yes" to a question, you will have to

18  consider the question to understand what the witness is saying.

19         Also not evidence, objections by lawyers, including

20  objections in which the lawyers state facts, any testimony I

21  strike or tell you to disregard, and anything you may see or

22  hear about this case outside the courtroom.

23         You should use your common sense in weighing the

24  evidence.  Consider it in light of your everyday experience

25  with people and events and give it whatever weight you believe

1    it deserves.  If your experience and common sense tells you

2    that certain evidence reasonably leads to a conclusion, you may

3    reach that conclusion.

4           The rules of evidence control what can be received

5    into evidence.  When a lawyer asks a question or offers an

6    exhibit into evidence and a lawyer on the other side thinks

7    that it is not permitted by the rules of evidence, that lawyer

8    may object.  An objection simply means that the lawyer is

9    asking me to decide whether the evidence should be allowed

10   under the rules.

11          Lawyers have a responsibility to their clients to make

12   objections when they think evidence being offered is improper

13   under the rules of evidence.  You should not be influenced by

14   the fact that an objection is made.

15          You should also not be influenced by my rulings on

16   objections to evidence.  If I overrule an objection, the

17   question may be answered or the exhibit may be received as

18   evidence and you should treat the testimony or exhibit like any

19   other.

20          I may allow evidence, testimony, or exhibits only for

21   a limited purpose.  If I do that, I will instruct you to

22   consider the evidence only for that limited purpose, and you

23   must follow my instruction.

24          Now, if I sustain an objection, the question will not

25   be answered or the exhibit will not be received as evidence.

1    Whenever I sustain an objection, you must disregard the

2    question or the exhibit entirely.  Do not think about or guess

3    what the witness might have said in answer to the question.  Do

4    not think about or guess what the exhibit might have shown.

5            Sometimes a witness may have already answered before a

6    lawyer objects or before I rule on the objection.  If that

7    happens and if I sustain the objection, you should disregard

8    the answer that was given.

9            Also, I may order that some testimony or other

10   evidence be stricken or removed from the record.  If I do that,

11   I will instruct you to disregard that evidence.  That means

12   when you are deciding the case, you must not consider or be

13   influenced in any way by the testimony or other evidence that I

14   told you to disregard.

15           Although the lawyers may call your attention to

16   certain facts or factual conclusions that they think are

17   important, what the lawyers say is not evidence and is not

18   binding on you.  It is your own recollection and interpretation

19   of the evidence that controls your decision.

20           Also, do not assume from anything I do or say during

21   the trial that I have any opinion about the evidence or about

22   any of the issues in the case or about what your verdict should

23   be.

24           Two types of evidence may be used in this trial:

25   Direct evidence and circumstantial or indirect evidence.  You

1    may use both types of evidence in reaching your verdict.

2         Direct evidence is simply evidence which, if believed,

3    directly proves a fact.  An example of direct evidence occurs

4    when a witness testifies about something the witness knows from

5    his or her own senses, something the witness has seen, touched,

6    heard, or smelled.

7         Circumstantial evidence is evidence which, if

8    believed, indirectly proves a fact.  It is evidence that proves

9    one or more facts from which you could find or infer the

10   existence of some other fact or facts.

11        An inference is simply a deduction or conclusion that

12   reason, experience, and common sense leads you to make from the

13   evidence.  An inference is not a suspicion or a guess.  It is a

14   reasoned, logical decision to find that a disputed fact exists

15   on the basis of another fact.

16        For example, if someone walked into the courtroom

17   wearing a wet raincoat and carrying a wet umbrella, that would

18   be circumstantial or indirect evidence from which you could

19   find or conclude that it was raining.  You would not have to

20   find that it was raining, but you could.

21        Sometimes different inferences may be drawn from the

22   same set of facts.  The government may ask you to draw one

23   inference, and the defense may ask you to draw another.  You

24   and you alone must decide what inferences you will draw based

25   on all the evidence.

1          You should consider all the evidence that is presented

2     in this trial, direct and circumstantial.  The law makes no

3     distinction between the weight that you should give to either

4     direct or circumstantial evidence.  It is for you to decide how

5     much weight to give any evidence.

6          In deciding what the facts are, you must decide what

7     testimony you believe and what testimony you do not believe.

8     You are the sole judges of the credibility of the witnesses.

9     Credibility refers to whether a witness is worthy of belief.

10    Is the witness truthful?  Is the witness's testimony accurate?

11    You may believe everything a witness says or only part of it or

12    none of it.

13         You may decide whether to believe a witness based on

14    his or her behavior and manner of testifying, the explanations

15    the witness gives, and all the other evidence in the case just

16    as you would in any important matter where you are trying to

17    decide if a person is truthful, straightforward, and accurate

18    in his or her recollection.  In deciding the question of

19    credibility, remember to use your common sense, your good

20    judgment, and your experience.

21         In deciding what to believe, you may consider a number

22    of factors:  The opportunity and ability of the witness to see

23    or hear or know the things about which the witness testifies;

24    the quality of the witness's knowledge, understanding, and

25    memory; the witness's appearance, behavior, and manner while

1   testifying; whether the witness has an interest in the outcome

2   of the case or any motive, bias, or prejudice; any relation the

3   witness may have with a party in the case and any effect the

4   verdict may have on the witness; whether the witness said or

5   wrote anything before trial that is different from the

6   witness's testimony in court; whether the witness's testimony

7   is consistent or inconsistent with other evidence that you

8   believe; and any other factors that bear on whether the witness

9   should be believed.

10          Inconsistencies or discrepancies in a witness's

11   testimony or between the testimony of different witnesses may

12   or may not cause you to disbelieve a witness's testimony.  Two

13   or more persons witnessing an event may simply see or hear it

14   differently.  Mistaken recollection, like failure to recall, is

15   a common human experience.

16          In weighing the effect of an inconsistency, you should

17   consider whether it is about a matter of importance or an

18   insignificant detail.  You should also consider whether the

19   inconsistency is innocent or intentional.

20          You are not required to accept testimony even if the

21   testimony is not contradicted and the witness is not impeached.

22   You may decide that the testimony is not worthy of belief

23   because of the witness's bearing and demeanor or because of the

24   inherent improbability of the testimony or for other reasons

25   that are sufficient to you.

1       After you make your own judgment about the

2  believability of a witness, you can then attach to the

3  witness's testimony the importance or weight that you think it

4  deserves.

5       The weight of the evidence to prove a fact does not

6  necessarily depend on the number of witnesses who testify.

7  What is more important than numbers is how believable the

8  witnesses are and how much weight you think their testimony

9  deserves.

10       The government has charged the defendant, Christopher

11  Collare, with violating federal law, specifically wire fraud,

12  honest services mail fraud, bribery, distribution of heroin,

13  and making false statements.

14       The charges against Mr. Collare are contained in the

15  indictment.  An indictment is just the formal way of specifying

16  the exact crimes Mr. Collare is accused of committing.  An

17  indictment is simply a description of the charges against a

18  defendant.  It is an accusation only.  An indictment is not

19  evidence of anything, and you should not give any weight to the

20  fact that Mr. Collare has been indicted in making your decision

21  in this case.

22       To help you follow the evidence, I will now give you a

23  brief summary of the elements of each offense, each of which

24  the government must prove beyond a reasonable doubt in order to

25  convict Mr. Collare of the offenses charged.

1          Counts 1 to 16 of the indictment charge Mr. Collare

2    with wire fraud.

3          In order for you to find Mr. Collare guilty of wire

4    fraud, you must find that the government proved beyond a

5    reasonable doubt each of the following three elements:

6          First, that Mr. Collare knowingly devised a scheme to

7    defraud or to obtain money or property by materially false or

8    fraudulent pretenses, representations, or promises, or

9    willfully participated in such a scheme with knowledge of its

10   fraudulent nature; second, that Mr. Collare acted with the

11   intent to defraud; and, third, that in advancing, furthering,

12   or carrying out the scheme, Mr. Collare transmitted any

13   writing, signal, or sound by means of a wire, radio, or

14   television communication in interstate commerce or caused the

15   transmission of any writing, signal, or sound of some kind by

16   means of a wire, radio, or television communication in

17   interstate commerce.

18         Counts 19 and 20 of the indictment charge Mr. Collare

19   with honest services mail fraud.

20         In order for you to find Mr. Collare guilty of honest

21   services mail fraud, you must find that the government proved

22   beyond a reasonable doubt each of the following three elements:

23         First, that Mr. Collare knowingly devised a scheme to

24   defraud or to deprive another of the intangible right of honest

25   services by materially false or fraudulent pretenses,

1   representations, or promises or willfully participated in such

2   a scheme with knowledge of its fraudulent nature; second, that

3   Mr. Collare acted with the intent to defraud; and, third, that

4   in advancing, furthering, or carrying out the scheme,

5   Mr. Collare used the mails or a private or commercial

6   interstate carrier or caused the mails or private or commercial

7   interstate carrier to be used.

8           Count 21 of the indictment charges Mr. Collare with

9   solicitation of a bribe.

10          In order for you to find Mr. Collare guilty of this

11  offense, you must find that the government proved beyond a

12  reasonable doubt each of the following five elements:

13          First, that at the time alleged in the indictment

14  Mr. Collare was an agent of the Borough of Carlisle or

15  Cumberland County, Pennsylvania; second, that the Borough of

16  Carlisle or Cumberland County, Pennsylvania, received federal

17  benefits in excess of $10,000 in a one-year period; third, that

18  Mr. Collare accepted, agreed to accept, solicited, or demanded

19  something of value from Person Number 16; fourth, that

20  Mr. Collare acted corruptly with the intent to be influenced in

21  connection with the business, a transaction, or a series of

22  transactions of the Borough of Carlisle or Cumberland County,

23  Pennsylvania; and, fifth, that the value of the business,

24  transaction, or series of transactions to which the payment

25  related was at least $5,000.

1          Count 22 of the indictment charges Mr. Collare with
2    demanding, seeking, or receiving a bribe while a public
3    official.
4          In order for you to find Mr. Collare guilty of this
5    offense, you must find that the government proved beyond a
6    reasonable doubt each of the following three elements:
7          First, that Mr. Collare demanded, sought, received, or
8    agreed to accept something of value; second, that Mr. Collare
9    was, at that time, a public official of the United States or
10   was acting on behalf of the United States; and, third, that
11   Mr. Collare did so corruptly in return for being influenced in
12   the performance of an official act.
13         Count 23 of the indictment charges Mr. Collare with
14   distributing a mixture or substance containing a controlled
15   substance, specifically heroin.
16         In order for you to find Mr. Collare guilty of this
17   offense, you must find that the government proved beyond a
18   reasonable doubt each of the following three elements:
19         First, that Mr. Collare distributed a mixture or
20   substance containing a controlled substance; second, that
21   Mr. Collare distributed the controlled substance knowingly or
22   intentionally; and, third that the controlled substance was
23   heroin.
24         Counts 24 through 29 of the indictment charge
25   Mr. Collare with making false, fictitious, and fraudulent

1  statements and representations to a department or agency of the

2  United States.

3       In order for you to find Mr. Collare guilty of this

4  offense, you must find that the government proved beyond a

5  reasonable doubt each of the following five elements:

6       First, that Mr. Collare made the statement as charged;

7  second, that the statement was false; third, that the falsity

8  concerned a material matter; fourth, that Mr. Collare acted

9  willfully knowing that the statement was false; and, fifth,

10  that the false statement was made or used for a matter within

11  the jurisdiction of a department or agency of the United

12  States.

13       What I have just told you is only a preliminary

14  outline of the elements of the offenses charged.  At the end of

15  the trial, I will give you final instructions on the elements

16  of the offenses charged and on other matters of law, both

17  orally and in writing.  Those final instructions will be more

18  detailed, and they will guide you in reaching your verdict in

19  this case.

20       As I stated the elements of the charges, you may have

21  noticed that I did not mention Counts 17 and 18 of the

22  indictment.  That is because Counts 17 and 18 are no longer

23  before you in this case.  You should not be concerned with, nor

24  should you speculate about the reason those charges are no

25  longer part of this trial.

1        Mr. Collare is on trial only for the charges in Counts

2   1 through 16 and Counts 19 through 29.  You may consider the

3   evidence presented in the case only as it relates to those

4   charges.

5        Mr. Collare has pleaded not guilty to the offenses

6   charged.  Mr. Collare is presumed to be innocent.  He starts

7   the trial with a clean slate, with no evidence against him.

8        The presumption of innocence stays with Mr. Collare

9   unless and until the government presents evidence that

10  overcomes that presumption by convincing you that Mr. Collare

11  is guilty of the offenses charged beyond a reasonable doubt.

12  The presumption of innocence requires that you find Mr. Collare

13  not guilty unless you are satisfied that the government has

14  proven guilt beyond a reasonable doubt.

15       The presumption of innocence means that Mr. Collare

16  has no burden or obligation to present evidence at all or to

17  prove to you that he is not guilty.  The burden or obligation

18  of proof is on the government to prove that Mr. Collare is

19  guilty, and the burden stays with the government throughout the

20  trial.

21       In order for you to find Mr. Collare guilty of the

22  offenses charged, the government must convince you that

23  Mr. Collare is guilty beyond a reasonable doubt.  That means

24  that the government must prove each and every element of the

25  offenses charged beyond a reasonable doubt.  A defendant may

1    not be convicted based on suspicion or conjecture but only on

2    evidence proving guilt beyond a reasonable doubt.

3           Proof beyond a reasonable doubt does not mean proof

4    beyond all possible doubt or to a mathematical certainty.

5    Possible doubt -- possible doubts or doubt based on conjecture

6    or speculation are not reasonable doubts.  A reasonable doubt

7    is a fair doubt based on reason, logic, common sense, or

8    experience.

9           A reasonable doubt means a doubt that would cause an

10   ordinary person -- an ordinary, reasonable person to hesitate

11   to act in matters of importance in his or her own life.  It may

12   arise from the evidence or from the lack of evidence or from

13   the nature of the evidence.

14          If, after hearing all the evidence, you are convinced

15   that the government has proven Mr. Collare guilty beyond a

16   reasonable doubt, you should return a verdict of guilty.

17   However, if you have a reasonable doubt as to an element of an

18   offense, then you must return a verdict of not guilty.

19          Mr. Collare is charged with more than one offense, and

20   each offense is charged in a separate count of the indictment.

21   The number of offenses charged is not evidence of guilt, and

22   this should not influence your decision in any way.

23          You must separately consider the evidence that relates

24   to each offense, and you must return a separate verdict for

25   each offense at the end of the trial.  For each offense

1   charged, you must decide whether the government has proven

2   beyond a reasonable doubt that the defendant is guilty of that

3   particular offense.

4           Your decision on one offense, whether guilty or not

5   guilty, will not influence your decision on any of the other

6   offenses charged.  Each offense should be considered

7   separately.

8           All right.  Ladies and gentlemen, that concludes my

9   preliminary instructions.  I will now turn to counsel for the

10  United States and ask, do you wish to give an opening

11  statement?

12          *MR. MARCHIOLI:*  Yes, Your Honor.

13          *THE COURT:*  All right.  Please proceed.

14          *MR. MARCHIOLI:*  Thank you.

15      *(Whereupon, Mr. Marchioli gave an opening statement on*

16  *behalf of the government, and Mr. Abom gave an opening*

17  *statement on behalf of the defendant.)*

18          *THE COURT:*  Thank you, Mr. Abom.  All right.  Jurors,

19  we are approaching 4:30, and as promised, I will let you go

20  today by 4:30.

21          The plan for tomorrow is we will resume trial at

22  9:00 a.m.  I would ask that you all plan to be here by 8:45,

23  and you'll proceed to jury deliberation room -- the jury

24  deliberation room.  Ms. Edleblute will check in with you and

25  make sure you're all here and ready to proceed, and then I will

1   plan to bring you in at 9:00 a.m.

2          Because we're about to break for the day, I do want to

3   remind you of the instructions I gave you earlier about your

4   conduct as jurors.

5          During this recess and all other recesses, do not

6   discuss the case with anyone and do not permit anyone to

7   discuss the case with you.

8          In addition, as I indicated a few moments ago, you

9   will be asked to decide this case based solely on the evidence

10  presented in this courtroom.  This means that after you leave

11  here for the night, you must not watch or listen to any news

12  reports concerning this trial on television or on radio or read

13  any news accounts of the trial in a newspaper or on the

14  Internet.

15         Further, you must not conduct any independent research

16  about this case, the matters in this case, the legal issues in

17  the case, or the individuals involved in this case.

18         All right.  At this point, ladies and gentlemen, we

19  will recess for the day, and we will look forward to seeing you

20  at 9:00 a.m. tomorrow morning.  Court stands in recess.

21         *COURTROOM DEPUTY:*  Please rise.

22     *(Jury leaves courtroom.)*

23         *THE COURT:*  Are there any matters either counsel would

24  like to place on the record before we break for the day?

25         *MR. MARCHIOLI:*  Not for the government, Your Honor.

1          MR. ABOM:  No, Your Honor.

2          THE COURT:  We'll go off the record then.

3     (Discussion held off the record.)

4     (Whereupon, the proceedings were adjourned at 4:23 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                CERTIFICATE OF OFFICIAL COURT REPORTER

2

3

4       I, Lori A. Shuey, Federal Certified Realtime Reporter, in

5   and for the United States District Court for the Middle

6   District of Pennsylvania, do hereby certify that pursuant to

7   Section 753, Title 28, United States Code, that the foregoing

8   is a true and correct transcript of the stenographically

9   reported proceedings held in the above-captioned matter and

10   that the transcript page format is in conformance with the

11   regulations of the Judicial Conference of the United States.

12       Dated in Harrisburg, Pennsylvania, this 5th day of

13   April, 2022.

14

15                        **/s/ Lori A. Shuey**
                         Lori A. Shuey
16                         Federal Certified Realtime Reporter

17

18

19

20

21

22

23

24

25