1            IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

2

UNITED STATES OF AMERICA      :

3                            : Case No. 1:20-CR-017
           vs.            :

4                            : (Judge Wilson)
CHRISTOPHER COLLARE,        :

5                  Defendant    :

6

7

8

9         TRANSCRIPT OF SENTENCING PROCEEDINGS
      BEFORE THE HONORABLE JENNIFER P. WILSON

10        UNITED STATES DISTRICT COURT JUDGE
        MARCH 11, 2022; 8:35 A.M.

11          HARRISBURG, PENNSYLVANIA

12

13

14

15

16

17

18

19

20

21            Lori A. Shuey
     Federal Certified Realtime Reporter

22        United States Courthouse
    228 Walnut Street, P.O. Box 983

23       Harrisburg, PA  17108-0983
         717-215-1270

24      lori_shuey@pamd.uscourts.gov
  Proceedings recorded by mechanical stenography; transcript

25      produced by computer-aided transcription.

1                           APPEARANCES

2

FOR THE GOVERNMENT:

3
      Carlo D. Marchioli, Assistant U.S. Attorney
4     United States Attorney's Office
      228 Walnut Street, Second Floor
5     Harrisburg, PA  17101

6     Phillip J. Caraballo-Garrison, Assistant U.S. Attorney
      United States Attorney's Office
7     235 North Washington Avenue, Suite 311
      Scranton, PA  18503
8
      James I. Pearce, Trial Attorney
9     United States Department of Justice
      Public Integrity Section, Criminal Division
10    1331 F. Street N.W., Third Floor
      Washington, D.C.  20004
11
FOR THE DEFENDANT:
12
      John A. Abom, Esquire
13    Abom & Kutulakis
      2 West High Street
14    Carlisle, PA  17013

15 ALSO PRESENT:

16    Crystal Bard, U.S. Probation Officer

17

18

19

20

21

22

23

24

25

1              *THE COURT:*  Good morning.  Please be seated, everyone.

2     This is the case of *United States v. Christopher Collare*

3     docketed at this court's Number 1:20-CR-17.  This is the date

4     set for Mr. Collare's sentencing hearing.

5              I note for the record the United States is represented

6     by Assistant United States Attorney Carl Marchioli, James

7     Pearce, and Phil Caraballo.  Mr. Collare is present with his

8     counsel, Jay Abom, Esquire.  Also present is the probation

9     officer who prepared the presentence report, Crystal Bard.

10             Let me begin by asking, Mr. Collare, have you read a

11    copy of the final presentence report and the addendum to the

12    presentence report?

13             *THE DEFENDANT:*  Yes, Your Honor, I have.

14             *THE COURT:*  And I appreciate you standing.  You can

15    remain seated, if you'd like.  There will be some subsequent

16    questions, so I hate to have you stand up every time.

17             Mr. Collare, have you had sufficient time to discuss

18    the presentence report and the addendum with your attorney?

19             *THE DEFENDANT:*  Yes, Your Honor.

20             *THE COURT:*  And, Mr. Abom, can you confirm that you

21    and Mr. Collare have had sufficient time to review both the

22    presentence report and the addendum?

23             *MR. ABOM:*  Yes, we have.

24             *THE COURT:*  Ms. Bard, are there any portions of the

25    presentence report that were not disclosed to the defendant?

1           *PROBATION OFFICER:*  No, Your Honor.  Everything has

2      been disclosed.

3           *THE COURT:*  Thank you.  And for counsel's information,

4      I have reviewed the following documents that were submitted in

5      advance of today's hearing:

6           I reviewed the final presentence report and addendum,

7      both of which are dated November 23 of 2021.  I reviewed the

8      defendant's sentencing memorandum and the attachments thereto,

9      which were filed on February 28 of 2022.  I reviewed the

10     government's sentencing memorandum filed on March 4 of 2022.

11     And I also reviewed 20 character letters submitted on behalf of

12     the defendant, two letters submitted via the U.S. Attorney's

13     Office on March 9, and then one additional letter that was

14     submitted today.

15          If I could just ask everybody to silence their phones

16     at this point, if you haven't already.  That would be for the

17     best.

18          Are there any additional documents or letters on

19     behalf of the defendant that you would like me to review?

20          *MR. ABOM:*  No, Your Honor.

21          *THE COURT:*  On behalf of the government?

22          *MR. MARCHIOLI:*  No, Your Honor.

23          *THE COURT:*  In accordance with the United States

24     sentencing -- with the United States Supreme Court's decision

25     in *Gall v. United States* and the Third Circuit Court of Appeals

1    decision in *United States v. Gunter*, I will engage in a

2    three-step process at today's sentencing hearing.

3          First, I will calculate the advisory guidelines range;

4    second, I will rule on any outstanding motions for departure

5    and state the impact, if any, of such ruling on the guidelines;

6    third, I will exercise discretion and consider the factors set

7    forth in 18, U.S.C., Section 3553(a), in setting a sentence

8    which may vary from the advisory guidelines range.

9          Although I will start with the guidelines as an

10   initial benchmark, I will not presume that the guidelines range

11   is reasonable, rather I will make an individualized assessment

12   based on the facts presented.

13         Turning to the first step of today's sentencing

14   hearing -- of course, I already ruled on the objections to the

15   presentence report.  Nonetheless, I'll just ask, Mr. Marchioli,

16   on behalf of the United States, are there any outstanding or

17   additional objections by the government to the presentence

18   report?

19         *MR. MARCHIOLI:*  No, Your Honor.

20         *THE COURT:*  Mr. Abom, the same question to you, any

21   remaining objections?

22         *MR. ABOM:*  There are none, Your Honor.

23         *THE COURT:*  All right.  And so then based on the

24   rulings that I made in a written order prior to this hearing,

25   that order being docketed at Document 131, the court has

1    adopted in part and rejected in part the findings and

2    guidelines calculations of the presentence report.

3         The defendant's resulting total offense level is 22.

4    The defendant has zero criminal history points and is in

5    criminal history category one.  The guidelines range of

6    imprisonment is 41 to 51 months.

7         With that, we will turn to step two where I address

8    any motions for departure.  Is there any motion for departure

9    by the United States?

10        *MR. MARCHIOLI:*  No, Your Honor.

11        *THE COURT:*  Any motion for departure by the defendant?

12        *MR. ABOM:*  No, Your Honor.

13        *THE COURT:*  All right.  With that, we will turn then

14   to step three where I consider the relevant 3553(a) factors.

15        In order to help me evaluate these factors, I like to

16   proceed as follows:

17        First, I'll be happy to hear -- although I have

18   reviewed every letter that was submitted both by the government

19   and the defendant, if there are any individuals present who

20   would like to address the court on behalf of the defendant,

21   I'll hear from those individuals first.  Then I'm happy to hear

22   argument from you, Mr. Abom.

23        I'll then turn to the United States, and if there are

24   any individuals present who wish to address the court on behalf

25   of the United States, I'm happy to hear from them and then from

1    whichever counsel intends to address the court with respect to

2    the government's position.

3          And then finally, Mr. Collare, you get to have the

4    last word, so to speak, and so I'll hear from you after each of

5    the attorneys and any individuals present have addressed the

6    court.  Mr. Abom.

7          *MR. ABOM:*  Thank you, Your Honor.  Your Honor, we're

8    going to rest on the number -- the numerous letters of support

9    that we already have in lieu of presenting live testimony to

10   the court.  So I briefly want to summarize and just make some

11   brief arguments on behalf of Mr. Collare.

12         I note through -- as to the 3553(a) factors,

13   Mr. Collare served his country here in the Air National Guard

14   for a period of six years, and he served his community of

15   Carlisle very well as a police officer.

16         In the community, he was active in his community.  He

17   received commendations and a great deal of respect and

18   recognition as a police officer.  And the conduct for which the

19   court heard through the course of this trial was a small part

20   of an otherwise very stellar career as a police officer with

21   the Carlisle Borough.

22         Mr. Collare has no criminal history whatsoever.  And

23   as the 20 letters of support attest, he is a kind,

24   compassionate individual.  He's a man of faith.  And certainly

25   those letters paint a much more complete picture than merely

1    what the court heard through the course of the trial this past

2    July.

3            I want to respond a little bit to some of the

4    arguments the government made because the government, I know,

5    is seeking an upward variance and I note that for what appears

6    to be reasons that are already accounted for in the guidelines.

7            Mr. Collare is receiving a higher guideline range

8    because of his role as a police officer, because of -- he

9    received an increase because he was in a position of public

10   trust.  He also received a significant increase in his

11   guideline range due to the sensitive nature of his position.

12           So in the position he's in, the guidelines account for

13   that, shall we say that increase, and it seems the government

14   would like to go further and give an aggravated range sentence.

15           I also note that it appears the government would like

16   to punish Mr. Collare not necessarily for the conduct in which

17   he engaged, and certainly they're asking that and that's the

18   vehicle by which this is happening, but it seems as if they

19   want to punish him for conduct for which he was not charged.

20           He is here on two bribery convictions, a drug delivery

21   conviction, and false statements, but it seems as if the -- you

22   know, the argument of vulnerable victims falls in line of,

23   well, let's punish him for things for which we did not charge

24   him and for which he was not convicted.

25           And certainly, you know, I know this is a sensitive

1    topic, but this is not unlike some of the cases they cited to

2    where somebody sexually assaulted other people, just with one

3    exception.  Throughout the course of the trial, every single

4    person, these adult women were active participants and they

5    were -- entered into this, if you believe them, even at their

6    face value, they did this voluntarily, willingly, and they

7    chose to participate in it.  They were not forced to do so by

8    Mr. Collare.

9          And I note that one exception, there was Ms. Whistler

10   during the course of her testimony, and I would suggest to the

11   court that that testimony was not credible at all and even

12   received some subsequent information where it appears, if not

13   these government agents, at least one law enforcement officer

14   truly believes that she fabricated that entire incident for

15   which I know the government cited to in its sentencing

16   memorandum.

17         So with the reasons already set forth in our

18   sentencing memorandum, because of Mr. Collare's long history

19   and body of being a good person, a good member of his

20   community, for service to this country, we do ask that the

21   court consider going below the guideline range and vary

22   downward.

23         *THE COURT:*  All right.  Thank you, Mr. Abom.  United

24   States.

25         *MR. MARCHIOLI:*  Thank you, Your Honor.  The government

1  is requesting an upward variance and a sentence no less than 60

2  months.  The principal points in support of that we expressed

3  in our sentencing memorandum.

4         And I disagree with Mr. Abom that the points that we

5  set forth are incorporated into the guidelines.  I think we

6  made the point that the factors that we were relying upon

7  really weren't accounted for in the guideline range.  And

8  that's the length of the conduct that occurred here, we're

9  talking about at least a six-year period, at a minimum, as well

10  as the exploitation of multiple individuals.

11         There is one instance, at least, that the court heard

12  of where there was a nonconsensual sex act that occurred, and I

13  disagree with Mr. Abom about the credibility of that testimony.

14  I think the jury credited that testimony.

15         And even beyond that, even for the women who you might

16  be able to say consented to the conduct, given the relative

17  disparity, the power dynamic between Mr. Collare and those

18  women, at a minimum, he was exploiting them.  He fed their

19  addictions.  He held over their heads both their own criminal

20  circumstances, as well as the criminal circumstances of their

21  loved ones, and he exploited that to his advantage.

22         Beyond the points that we set forth in the sentencing

23  memo, there are a few additional things I want to highlight and

24  first are a couple specific 3553(a) factors.

25         In the government's view, almost all of the 3553(a)

1    factors support a significant sentence in this case, but I want

2    to highlight two in particular, two that get mentioned at most

3    sentencing hearings, I think, but that have particular

4    applicability here.

5            The first is the need for the sentence to promote

6    respect for the law.  The public needs to see that for

7    individuals who are entrusted to enforce the law and who are

8    given significant authority over other individuals and their

9    lives, that when they violate the law, when they abuse that

10   authority, they are held accountable.

11           When an officer like Mr. Collare violates the law, the

12   public -- the public requires the criminal justice system to

13   send a clear message that that type of conduct is not going to

14   be tolerated.

15           The second 3553(a) factor that I think is particularly

16   important in a case like this is the need to deter others.  And

17   there can be debates, I think in general, about whether general

18   deterrence is really served through sentencing, but I think in

19   a case like this in particular, general deterrence is an

20   important objective and one that can actually be achieved.

21           And really the audience here is the law enforcement

22   community, and I think most of the individuals in this

23   courtroom probably agree that the vast, vast majority of law

24   enforcement officers make daily sacrifices and serve throughout

25   their careers with unwavering integrity.

1          But for the very small minority who have crossed the

2     line or are approaching the line, it's critically important

3     that cases like this are prosecuted and that serious sentences

4     are imposed so that those individuals in that small minority

5     get the clear message that this type of conduct is not going to

6     be tolerated.

7          Moving on from the specific 3553(a) factors, I do want

8     to say a few things more generally about some of the themes

9     that came across in the defense's sentencing memorandum which

10    Mr. Abom summarized again this morning, as well as the themes

11    expressed in most of the character letters that the defense

12    submitted.

13         And really I think running through all those

14    submissions are the facts that the defendant had a positive

15    career, he's led a positive life in many respects.  And what I

16    want to suggest to the court is that a laudable career is

17    really going to be present in most cases of this type when

18    you're talking about a public official who is accepting bribes

19    from individuals.

20         And I would suggest that that is an aggravating

21    factor, and I think the sentencing guidelines reflect that it's

22    an aggravating factor because really it's that position of

23    authority, it's the trust that's been built up over time that

24    facilitates the crime.  And it's that position of authority and

25    the trust that's been built up over time that creates the

greatest risk for damage to important institutions in our
society.

          And it's also the trust that's been built up over time
that makes it very difficult to detect these types of crimes
and to prosecute these types of crimes.  We heard it again this
morning just a few moments ago, who is more believable, the
veteran police detective and FBI task force officer or the
struggling addict who has a criminal history a mile long?

          And I think that same sort of rhetorical question came
across in a lot of the reference letters that were submitted,
at least implicitly.  And I don't want to take time to engage
with those letters directly, we're not here to retry this case,
but I do want to at least say that in my experience, rarely
have I seen a collection of letters that have so uniformly not
even acknowledged the defendant's crimes.

          And instead of any even reference to the crimes, there
are references to the defendant apparently being intimidated
and coerced by federal agents, to the corruption of the FBI,
and to witnesses being threatened so that they would say
certain things on the witness stand.  And, really, those things
have no basis in reality.

          And I think the obvious inference is that the
individuals that wrote those things were getting those ideas
from the defendant himself.  And even if that's not the case, I
think at a minimum, the defense wants the court to have those

1    things in its mind as it's imposing sentence.

2           And I say all this just to highlight that the

3    defendant is still using his position to his advantage.  He's

4    still trying to make people look the other way.  But Your Honor

5    heard firsthand the harm that he caused and saw the harm that

6    he caused.  I think at multiple points during the trial the

7    emotion was raw.

8           We had individuals come in here who testified about

9    what the defendant did to them, what they saw the defendant do,

10   and that's despite his powerful position, despite really

11   getting nothing out of that themselves, they came in here and

12   explained what happened to them.

13          The defendant serially exploited these individuals, he

14   serially abused his position, and he needs to receive a

15   significant sentence.  Thank you, Your Honor.

16          *THE COURT:*  Thank you, Mr. Marchioli.  All right.

17   Mr. Collare.

18          *THE DEFENDANT:*  Thank you, Your Honor.  I would just

19   like to take the opportunity to thank those who have supported

20   me, those who love me and know me.  Thank you.  I love you.

21   Thank you, Your Honor.

22          *THE COURT:*  Is there anything further you would like

23   to present, Mr. Collare?

24          *THE DEFENDANT:*  No.

25          *MR. ABOM:*  No, Your Honor.

1          *THE COURT:*  All right.  Well, I know that there is

2     considerable anxiety in this moment for you, Mr. Collare, for

3     your family, and for all those present.

4          I do have a number of factors that I need to address,

5     and I think it's important that everybody, most importantly

6     you, Mr. Collare, understand the basis for my sentencing

7     decision, and so I will take the time to explain it.

8          However, I am mindful of the fact, as I said, that

9     there is considerable anxiety in this moment.  So my preference

10    is to tell you the sentence I've selected at the outset, then

11    explain the reasons therefore, and finally to formally impose

12    sentence.

13         So after balancing the factors in Section 3553(a),

14    which I will explain in detail in a moment, I find that a

15    sentence above the guidelines range is appropriate in this

16    case.  A term of 75 months' imprisonment followed by a

17    three-year term of supervised release is reasonable,

18    appropriate, and not greater than necessary to meet sentencing

19    objectives.

20         The court finds that the defendant is able to pay a

21    fine in the amount of $9,000, which is $1,000 per count of

22    conviction, and shall also pay a special assessment of $900,

23    which is $100 per count of conviction.

24         In determining an appropriate sentence for the

25    defendant, I have considered all of the relevant factors in

1   arriving at a sentence which I have concluded satisfies the

2   purposes of 18, U.S.C., Section 3553(a).  And although I've

3   considered all of the factors, I make the following specific

4   observations on the record to explain why I have selected the

5   sentence of 75 months:

6         I begin with the nature and circumstances of the

7   offense conduct.  Mr. Collare was a police officer in Carlisle

8   from 2006 to 2018.  He served on the Cumberland County and FBI

9   drug task forces, and among other job duties, Mr. Collare was

10  entrusted to work with confidential informants and to handle

11  drug evidence.

12        For six years, based on the record in this case, that

13  being from 2012 to 2018, Collare abused the trust placed in him

14  in significant ways.  He solicited sex and sexual favors in

15  exchange for drugs and official action in criminal cases.

16        He misappropriated drugs obtained through task force

17  work and distributed them to women who were addicted to drugs

18  in order to foster relationships with those women for his own

19  purposes.  He lied on official forms and paperwork to conceal

20  his actions, and then he lied about his conduct once it was

21  being investigated.

22        I also look at the history and characteristics of the

23  defendant.  Mr. Collare, you're 54 years old, and unlike so

24  many defendants who appear before me and who I'm sure you have

25  seen sentenced in court, your history, your personal history,

1    really does not shed light on why we're here today.

2         You had a happy childhood.  You have a very supportive

3    family as indicated by the fact that they're here supporting

4    you today and as indicated in the 20 letters that I reviewed.

5    You have maintained healthy relationships with family members,

6    neighbors, friends, and up until the point when the charges in

7    this case surfaced, obviously with colleagues and coworkers.

8         There's no history that's in the record, at least, of

9    mental or physical health problems or substance abuse.  You've

10   maintained a consistent history of employment in valuable jobs

11   in the community.  I credit your military service and your

12   service as a law enforcement officer.  These are obviously

13   valuable positions in our country and in our community.

14        You had the respect of community members, colleagues,

15   neighbors, church members, family members, friends, and

16   coworkers.  The reference letters that have been submitted to

17   the court indicate that you had a rich life.  You have no

18   criminal record.

19        You have, to this day, an opportunity for employment

20   after you're released from imprisonment in your brother's

21   business, which is, quite, frankly, a rare opportunity for

22   someone who is now a convicted felon and enviable.

23        The character letters that I reviewed portray you,

24   Mr. Collare, as a responsible, admirable, and loving spouse,

25   parent, relative, friend, and coworker who is characterized as

1   a role model and source of support for many people in the
2   community.  I have no reason to doubt the credibility of the
3   individuals who wrote those letters.  I have no reason to doubt
4   that they believe the statements they made to me, and I accept
5   their statements as coming from the heart.

6          However, I presided in this trial, and I listened to
7   the testimony from Brielle Johnson, Ashley Barrick, Amy Keller,
8   Tiffany Newberry, Crystal Meeker, and Holly Morris, and those
9   witnesses portrayed a very different side to your personality.
10  Their testimony portrayed an individual who is very skilled at
11  obtaining personal gratification through manipulation and
12  deceitful conduct.

13         It is obvious to me that you were effectively, at
14  least from 2012 to 2018, leading a double life, on the one
15  hand, a decent and honorable man and, on the other hand, a
16  nefarious and deceitful law enforcement officer.  I think the
17  government makes a strong point that you used your position and
18  your reputation to facilitate the crimes you committed.

19         I also look at the issue of sentencing disparities.
20  This is actually not an argument that has been raised as a
21  sentencing disparity argument by either counsel.  However, the
22  government asked me to review the *McDonald* case, and I did.

23         I reviewed the docket in the case of *United States v.*
24  *McDonald* at Docket Number 3:21-CR-168.  And for reasons I'll
25  address further in a moment, I think it is important to have

1    the sentence in this case, the sentence imposed in this case,

2    be, to some extent, commensurate with the sentence of 72 months

3    that was imposed in that case.

4            I look at -- and I want to address collectively the

5    defense request for a variance and the government's request for

6    a variance in consideration of the need for the sentence

7    imposed.  So I'll address these factors simultaneously and

8    these requests.

9            The defendant requested a downward variance based on

10   the following mitigating factors:  His career as a law

11   enforcement officer and service in the military, as well as his

12   education, background, continuing support from family and

13   friends, as well as lack of criminal history and lack of

14   substance abuse.

15           The factors identified by defendant certainly support

16   the conclusion that the defendant has a low likelihood of

17   recidivism.  But in the court's view, they do not warrant a

18   downward variance either individually or cumulatively.

19           So I have denied the defendant's request for a

20   variance because I find that the factors raised by the

21   defendant are either adequately accounted for in the guideline

22   calculation or are not present to such a degree that they

23   outweigh the seriousness of the offense conduct.

24           Turning then to the government's request for an upward

25   variance, the government has requested an upward variance based

1   on the following assertedly aggravating factors:  The longevity

2   of the defendant's conduct and the defendant's exploitation of

3   particularly vulnerable members of the community.

4           I find that the factors cited by the government are

5   not adequately accounted for in the guideline calculation.  I

6   find that they are significant and that each of these factors

7   warrants an upward variance for the following reasons:

8           First, the longevity of the defendant's conduct

9   establishes that this was not an isolated incident.  This was a

10  course of conduct involving numerous women over a span of six

11  years.  Far from yielding to temptation in a single moment of

12  weakness, the defendant had a pattern of trading drugs or

13  personal influence for sexual favors.  He abused his position

14  as a drug task force officer to engage in criminal and

15  inappropriate acts for several years for his own pleasure.

16          Even worse, his conduct impacted the criminal justice

17  system and the public's confidence in law enforcement and

18  criminal justice.  I think it's appropriate to quote Chief

19  Kenneth Hassinger, who described the defendant's actions as

20  creating a, quote, cloud of doubt over the integrity of

21  defendant's investigations, as, quote, diminishing the

22  credibility of task force investigations more broadly.

23          So I find that this factor that has been argued by the

24  government and is supported by Chief Hassinger's testimony does

25  warrant an upward variance from the guideline range.

1          Second, defendant -- and I don't think this is too

2     strong of a word -- preyed upon numerous particularly

3     vulnerable women who were struggling with drug addiction and

4     involvement in the criminal justice system, either themselves

5     or through a loved one.  He exploited the vulnerabilities of

6     these women for his personal satisfaction.

7          This facet of the defendant's offense conduct is not

8     captured in the guideline range because the guideline based two

9     offense level enhancement for vulnerable victims does not apply

10    as a technical matter in this instance.

11         So considering the need for the sentence imposed to

12    promote respect for the law, to provide just punishment, to

13    afford adequate deterrence, and to reflect the seriousness of

14    the offense conduct, I have concluded that the factors

15    identified by the government do warrant an upward variance.

16         A sentence within the guideline range is simply not

17    adequate to accomplish these purposes of sentencing in this

18    particular case.

19         I am imposing an upward variance of 24 months, which

20    includes 12 months for the impact on public confidence and the

21    integrity of criminal investigations and 12 months for preying

22    on and exploiting vulnerable community members.

23         I note, and I commented on this already, but I do want

24    to emphasize that the government referenced the sentence

25    imposed on a defendant named Thomas McDonald in the case that I

1    referenced by docket number a moment ago.

2           I did review the docket for that case, and I conclude

3    that there are significant similarities between the offense

4    conduct in these cases.  And while there were differences in

5    the individual characteristics of the defendants, the sentence

6    imposed here, I think importantly, is commensurate with the

7    72-month sentence imposed on Defendant McDonald.

8           So with that explanation, I would ask that you stand,

9    Mr. Collare, for formal imposition of your sentence.

10          Pursuant to the Sentencing Reform Act of 1984, it is

11   the judgment of the court that the defendant, Christopher

12   Collare, is hereby committed to the custody of the Bureau of

13   Prisons to be imprisoned for a total term of 75 months.

14          This sentence consists of a sentence of 75 months on

15   Counts 21, 22, and 23, and 60 months on each of Counts 24

16   through 29 to be served concurrently with each other.

17          The court finds that the defendant has the ability to

18   pay a fine.  It is ordered that the defendant shall pay to the

19   clerk of the United States District Court the sum of $9,900,

20   consisting of a special assessment of $100 on each count for a

21   total of $900 due immediately and a fine of $1,000 on each

22   count for a total fine of $9,000.

23          During the term of imprisonment, the fine is payable

24   every three months in an amount after a telephone allowance

25   equal to 50 percent of the funds deposited into the defendant's

1    inmate trust fund account.

2           In the event the fine is not paid in full prior to the

3    commencement of supervised release, the defendant shall, as a

4    condition of supervised release, satisfy the amount due in

5    monthly installments of no less than $100 to commence 30 days

6    after release from confinement.

7           Upon release from imprisonment, the defendant shall be

8    placed on supervised release for a term of three years on each

9    of Counts 21 through 29 to be served concurrently.

10          Within 72 hours of release from the custody of the

11   Bureau of Prisons, the defendant shall report in person to the

12   probation office in the district to which the defendant is

13   released.

14          While on supervised release, the defendant must not

15   commit any federal, state, or local crimes, possess a dangerous

16   weapon, or unlawfully possess a controlled substance.

17          The defendant shall comply with the standard

18   conditions that have been adopted by this court, as well as the

19   following additional conditions:

20          One, the defendant must cooperate in the collection of

21   a DNA sample as directed.

22          Two, the defendant must apply all monies received from

23   income tax refunds, lottery winnings, judgments, and/or other

24   anticipated or unexpected financial gains to the outstanding

25   court-ordered financial obligation.

1          Three, the defendant must provide the probation

2   officer access to any requested financial information and

3   authorize the release of any financial information.  The

4   probation office may share financial information with the U.S.

5   Attorney's Office.

6          Four, the defendant must not incur new credit charges

7   or open additional lines of credit without the approval of the

8   probation officer.

9          Five, the defendant must pay the financial penalty in

10  accordance with the schedule of payments sheet in the judgment.

11  He must also notify the court of any changes in economic

12  circumstances that might affect the ability to pay this

13  financial penalty.

14          Sixth, and finally, the defendant must submit his

15  person, property, house, residence, vehicle, papers, computers,

16  other electronic communications or data storage devices or

17  media or office to a search conducted by a United States

18  probation officer.

19          Failure to submit to a search may be grounds for

20  revocation of release.  The defendant must warn any other

21  occupants that the premises may be subject to searches pursuant

22  to this condition.

23          The court finds that the defendant poses a low risk of

24  future substance abuse and therefore suspends the mandatory

25  drug testing requirement.

1          You may have a seat.  Thank you, Mr. Abom and

2   Mr. Collare.

3          I do have to advise you of your right to appeal.  You

4   have a right to appeal within 14 days after sentence is imposed

5   on you.  If you are unable to pay the costs of an appeal, you

6   may apply for leave to appeal in forma pauperis.  If approved,

7   counsel will be appointed for you and you will not be required

8   to pay any costs.

9          I think the final matter to be addressed is, you had

10  requested in your sentencing memorandum, Mr. Abom, that I

11  recommend to the Bureau of Prisons that they consider

12  Mr. Collare for placement at FCI Gilmer or another BOP facility

13  suitable for a former law enforcement officer.

14          *MR. ABOM:*  That is correct.

15          *THE COURT:*  That request remains?

16          *MR. ABOM:*  It does.

17          *THE COURT:*  All right.  And I will be glad to advance

18  that request.  Are there any other matters on behalf of

19  Mr. Collare?

20          *MR. ABOM:*  No, Your Honor.

21          *THE COURT:*  Is there anything else to be addressed on

22  behalf of the United States?

23          *MR. MARCHIOLI:*  No, Your Honor.

24          *THE COURT:*  Court is adjourned.

25      *(Whereupon, the proceedings were adjourned at 9:10 a.m.)*

1          CERTIFICATE OF OFFICIAL COURT REPORTER

2

3

4       I, Lori A. Shuey, Federal Certified Realtime Reporter, in

5  and for the United States District Court for the Middle

6  District of Pennsylvania, do hereby certify that pursuant to

7  Section 753, Title 28, United States Code, that the foregoing

8  is a true and correct transcript of the stenographically

9  reported proceedings held in the above-captioned matter and

10  that the transcript page format is in conformance with the

11  regulations of the Judicial Conference of the United States.

12       Dated in Harrisburg, Pennsylvania, this 5th day of

13  April, 2022.

14

15                         **/s/ Lori A. Shuey**
                           Lori A. Shuey
16                         Federal Certified Realtime Reporter

17

18

19

20

21

22

23

24

25